## EDWARD GOODMAN

*v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 19, 1907.*

1. FORGERY—*what elements are essential to constitute forgery.* To constitute the offense of forgery there must be a false writing or alteration of an instrument, the instrument as made must be apparently capable of defrauding, and an intention to defraud must appear.

2. SAME—*what instruments cannot be the subject of forgery.* An instrument that is void or without apparent legal efficacy on its face, or which is not shown by proper averment of extrinsic facts to be capable of affecting the rights of another, cannot be the subject of forgery.

3. SAME—*what must be averred in indictment for forging railroad pass.* An indictment for forging a time pass on a railroad with intent to defraud the railroad company must allege facts which show that the instrument set out in the indictment bears such similitude to a genuine pass of that character that a person of ordi-

nary intelligence might be deceived into accepting the pass as a genuine one.

4. SAME—*what will not be presumed in aid of indictment.* It will not be presumed, in aid of an indictment for forging a time pass on a railroad with intent to defraud the railroad company, that the company described in the instrument set out in the indictment owned any railroad, or that the official designated therein as general manager was, in fact, such general manager, there being no averments in the indictment to that effect.

5. JUDICIAL NOTICE—*existence of railroad must be proved.* The existence of a railroad is not a fact of which courts take judicial notice, but whenever such fact is brought into issue it must be averred and proven.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

Edward Goodman, plaintiff in error, was indicted, jointly with Harry Young and William Shepherd, in the criminal court of Cook county, for forgery, and for uttering as true and genuine a false and forged railroad pass. A motion to quash the indictment was sustained as to the first count, which charged forgery, and was overruled as to the second, which charged the uttering of the forged instrument. A *nolle prosequi* was entered as to Young, and the jury acquitted Shepherd and found Goodman guilty under the second count of the indictment.

The plaintiff in error insists that the court erred in overruling the motion to quash the second count of the indictment. The substance of that count is as follows: That Edward Goodman, Harry Young and William Shepherd, on the 10th of January, in the year 1905, did feloniously and falsely pass as true and genuine a certain false, forged and counterfeit transportation ticket, commonly called time pass, for the passage of certain persons, to-wit, a foreman and twelve men, upon the railroad of the Chicago Great Western Railway Company, a corporation, which said false, forged and counterfeit transportation ticket, commonly called time

pass, for the passage of certain persons, to-wit, foreman and twelve men, upon the railroad of the Chicago Great Western Railway Company, a corporation, so passed as true and genuine, as aforesaid, is in words and figures following, to-wit:

"Chicago Great Western railway employee's time pass.—No. B 5384—Pass foreman and twelve (12) men upon conditions on back hereof. Between all stations. Occupation, Thos. Phee & Co.'s contract, until December 31, 1904.

SAM. E. STICKNEY, *General Manager.*"

—that on the back of said time pass appeared the words and figures as follows, to-wit:

"Not good on limited trains 1 and 2. Not good unless countersigned by C. A. Engquist.        Countersigned: C. A. ENGQUIST.

"The person accepting this pass expressly agrees that the Chicago Great Western Railway Company shall not be liable for any injury to his person or property except in case of gross negligence, and that in no case shall the liability of the company exceed the sum of $1000.

"This pass is not transferable, and if presented by any other than the person named hereon, or if any alteration or erasure is made, the conductor will take up this pass and collect fare. Good until January 31, 1905.

SAM. E. STICKNEY, *General Manager.*"

—that they, the said Edward Goodman, said Harry Young and said William Shepherd, otherwise called "Billy," then and there well knowing the same to be false, forged and counterfeited, and with intent then and there to prejudice, damage and defraud the Chicago Great Western Railway Company, a corporation, organized and existing under and by virtue of the laws of the State of Illinois, passed the same as genuine; and the grand jurors aforesaid, upon their oaths aforesaid, do say that by reason of the premises aforesaid the said Edward Goodman and Harry Young and William Shepherd, otherwise called "Billy," are deemed guilty of forgery, contrary to the statute and against the peace and dignity of the same People of the State of Illinois.

FRANK H. BOWEN, (FRANCIS A. RIDDLE, of counsel,) for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (FLETCHER DOBYNS, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The first and most important question relates to the sufficiency of the second count in the indictment. The objection urged to the indictment is, that the writing set out is not such an instrument as the court can see, from an inspection, would have a tendency to defraud, and that there is no averment of extrinsic facts to aid the court to determine its fraudulent tendency.

Forgery has been variously defined. Blackstone defines forgery to be the fraudulent making or altering of a writing to the prejudice of another's rights. (4 Blackstone's Com. 247.) Wharton defines forgery to be the fraudulent falsifying of an instrument to another's prejudice. (1 Wharton on Crim Law,—8th ed.—sec. 653.) Bishop's definition is as follows: "Forgery is the fraudulent making of a false writing which, if genuine, would be apparently of some legal efficacy." (2 Bishop on Crim. Law, sec. 523.) Clark & Marshall, in their late work on the law of crimes, (sec. 392,) define forgery as the false making, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability.

From these definitions of the offense it follows that three essential elements must exist to constitute the offense: (1) There must be a false writing or alteration of an instrument; (2) the instrument as made must be apparently capable of defrauding; (3) there must be an intent to defraud. Unless the alleged instrument shows on its face that it is capable of defrauding, or such character is given it by extrinsic averments, forgery cannot be predicated upon it. Bonds, notes, checks, and other instruments for the payment of money or the creation of duties or obligations, are familiar illustrations of writings which usually show, on inspection,

that when forged they are capable of being used to defraud. Many cases are to be found in this and other courts in which convictions for forgery have been upheld where the indictment simply charged the forgery in proper language and set out a copy of the forged instrument without any extrinsic averments. Indeed, in the greater number of forgery cases no necessity exists for such extrinsic matter. While this is the general rule, applicable to most cases, yet cases not infrequently arise where the fraudulent character of the alleged forged writing can only be made to appear by innuendoes, introducing extraneous facts and circumstances which show that the writing possessed a fraudulent character not discernible except when read in the light of such facts and circumstances. An instrument that is void or without apparent legal efficacy on its face, or which is not shown, by averment of extrinsic facts, to be capable of affecting the rights of another, cannot be the subject of forgery. *Commonwealth* v. *Hinds,* 101 Mass. 209; *People* v. *Drayton,* 168 N. Y. 10; 60 N. E. Rep. 1048.

The indictment in this case contains no averments of extrinsic facts, and it is contended none are required. In this view we cannot concur. In order that the time pass in question should be used to defraud the Chicago Great Western Railway Company it is necessary that said pass should bear a similitude to a true and genuine pass. This similitude need only be such that the court can say that a reasonable and ordinary person might be deceived into accepting the same as true and genuine. It need not be so skillfully executed that it requires an expert to detect it. *Garmire* v. *State,* 104 Ind. 444; 4 N. E. Rep. 54; *Barnes* v. *Commonwealth,* 101 Ky. 556; 41 S. W. Rep. 772; Clark & Marshall on the Law of Crimes, p. 586.

The first matter requiring the aid of extrinsic averments in the case at bar is with respect to the use to which the writing in question is to be put. The writing recites, "Pass foreman and twelve men upon conditions on back hereof. Be-

tween all stations." Pass them how and over what? If the company had no lines of railroad or street railway lines, or other means of transporting persons from one place to another, then, manifestly, it could not be defrauded by persons offering the pass for transportation. It therefore becomes material and necessary to know the extrinsic fact whether the company owned or operated lines of railroad or other means of carrying passengers, and hence arises the necessity for the averments of the facts so that relevant and proper testimony to prove them could be introduced on the trial.

In the case of *Klawanski* v. *People*, 218 Ill. 481, which was an indictment for forging and uttering as true and genuine a false and forged complimentary theater ticket, we held that an indictment that failed to charge that an entertainment was to be held on the date the ticket purported to be good for admission and for which a consideration was required to be paid, and which failed to aver that the person who purported to issue such ticket was the agent and authorized to issue such ticket, was not good, even after a plea of guilty. In the *Klawanski case* we recognized and applied the well established rule of criminal pleading applicable to cases of forgery, and that case would seem to be conclusive of the questions arising on this indictment. We there held that this court could not take judicial notice that a certain entertainment was held on the 21st of December, for admission to which a consideration was to be charged, or that James Batles, whose name purported to be signed to the ticket, had any authority to issue such ticket. The indictment in the *Klawanski case* charged the forgery with an intent to defraud Jacob Litt. The forged ticket was written on the stationery of McVicker's theater, on which Jacob Litt's name appears as sole proprietor. This was held not sufficient to advise the court who Jacob Litt was or to show that he would be defrauded if the pass was used. All these facts were necessary in that case to show the tendency of the instrument to defraud the party who is named in the indict-

ment as the intended victim of the forgery. The instrument alleged to have been forged in the case at bar, like the theater ticket in the *Klawanski case,* requires the aid of extrinsic facts to show its fraudulent character.

While it is true that matters of which the court will take judicial notice need not be averred or proven, still the omitted circumstances here are not facts of such general knowledge and notoriety as that they will be judicially noticed. In a prosecution for counterfeiting money issued by the government, courts will take notice of the coins and bills issued by the government and of their denominations; but where the charge is for counterfeiting the bills of a national bank the rule is otherwise, and it must be averred and proven that the bank whose bills are alleged to have been counterfeited circulated money in the similitude of the alleged spurious bills. (Elliott on Evidence, secs. 2953-2956.) The existence of a railroad is not a fact of which courts take judicial notice, but whenever such fact is brought into issue it must be averred and proven. (*Ohio and Mississippi Railroad Co.* v. *Taylor,* 27 Ill. 207; *Logansport, Peoria and Burlington Railroad Co.* v. *Caldwell,* 38 id. 280.) In the case at bar the indictment alleges that the Chicago Great Western Railway Company was a corporation, but it does not aver that the said corporation owned or operated a line of railroad or other public conveyance for hire, and without these facts the court cannot see how the instrument in question could have a tendency to defraud the Chicago Great Western Railway Company. In the next place, there is no averment that Sam. E. Stickney was general manager of the Chicago Great Western Railway Company. This is important in view of the fact that the indictment charges the intent to defraud the railroad company. Had the intent charged been to injure and defraud a stranger to the corporation the rule would be otherwise. The corporation must be presumed to know who its officers and agents are, and it could only be defrauded by a forgery of an instrument

purporting to be signed by some one who in fact sustained a position of authority in the corporation, while an innocent third party might be deceived and defrauded by any name, either real or fictitious, which purported to be that of an agent or officer of the company.

The case of *State* v. *Thorn,* 66 N. C. 644, is an authority on this point and is cited and approved by Bishop in his work on Criminal Procedure. In that case the indictment was for forging an order drawn on Judge Howard by Fate Johnson. The proof showed that Johnson was the agent and manager of Howard and was authorized to draw orders in favor of employees of Howard, but these facts did not appear from the indictment. In reversing the case, Pearson, C. J., said: "The bill of indictment is defective in this: there is no averment to connect Johnson with Howard, so as to show that Johnson had authority, as agent of Howard, to state the account of laborers and draw on him for the balance due. Without this averment there is nothing from which the court can see that the false paper had a tendency to defraud Howard, or how it could have been issued for such purpose. The writing must have a tendency to injure. That tendency must be apparent to the court, either by the face of the writing or by the averment of facts extrinsic showing the tendency to injure. The indictment must aver that the party purporting to have signed the false paper had authority to sign and bind the party alleged to have been defrauded."

In *Daud* v. *State,* 34 Tex. Crim. App. 460, it was held that an order or time-check issued by a section foreman of a railroad company which showed the number of days the party had worked, the rate of wages and the deductions for board was the subject of forgery when aided by proper extrinsic averments showing the custom of the railroad company to pay time-checks when drawn by its section foreman. The case is much like the *Thorn case, supra,* only in the *Daud case* the pleader set out the extrinsic matters for want of which the *Thorn case* was reversed.

In *Overly* v. *State,* 34 Tex. Crim. App. 500, the forgery was of a railroad ticket, and the judgment was reversed for want of proper averments of extrinsic facts to show that the company might be defrauded by such ticket.

The rule is thus clearly laid down by the Court of Appeals of New York: "The rule of pleading established in this State in such cases is, that if the paper set forth in the indictment, and of which the forgery is predicated, does not, either upon its face or by the averment of extrinsic facts, affirmatively appear to be an instrument which, if genuine, would be operative, the indictment is bad, as failing to state facts sufficient to constitute a crime." *People* v. *Drayton,* 168 N. Y. 10, (60 N. E. Rep. 1048,) citing *People* v. *Shall,* 9 Cow. 778; *People* v. *Savage,* 5 N. Y. Crim. 541; *Fadner* v. *People,* 33 Hun, 240; *People* v. *Wilson,* 6 Johns. 320; *Cunningham* v. *People,* 4 Hun, 455; *People* v. *Harrison,* 8 Barb. 560.

The Supreme Court of Massachusetts has given the same rule its sanction in the following language: "In order to maintain an indictment for forgery at common law it must appear not only that there has been a false making of a written instrument for the purpose of fraud or deceit, but also that the forged instrument is of such a description that it might defraud or deceive if used with that intent; and that if the fraudulent character of the forged instrument is not manifest on its face, this deficiency should be supplied by such averments as would enable the court judicially to see that it had such a tendency." *Commonwealth* v. *Dunleay,* 157 Mass. 386; 32 N. E. Rep. 356.

In *United States* v. *Turner,* 32 U. S. 131, in sustaining a conviction for passing a forged bank bill which purported to be signed by John Ruske as president and D. Anderson as cashier, neither of whom held or had ever held the offices which by the forged bill they were purported to hold, the court said: "The object is to guard the public from false and counterfeit paper purporting on its face to be issued by

the bank.   It could not be presumed that persons in general would be cognizant of the fact who, at particular periods, were president and cashier of the bank.   The officers were liable to be removed at the pleasure of the directors, and the times of their appointment or removal, or even their names, could not ordinarily be within the knowledge of the body of the citizens.   The public mischief would be equally great whether the names were those of the genuine officers or of fictitious or unauthorized persons, and ordinary diligence could not protect them against imposition."   The reasoning of Justice Story in this case clearly shows the importance of keeping in mind the distinction between cases where the forgery is intended to defraud a person who knows the truth and one who has no means of knowing.   See, also, on the same point, *Neall* v. *United States,* 118 Fed. Rep. 699; *State* v. *Henning,* 158 Ind. 196; 63 N. E. Rep. 207.

The case of *Waterman* v. *People,* 67 Ill. 91, clearly recognizes the rule which requires the averment of extrinsic facts when the alleged forgery is of an instrument the fraudulent character of which does not appear from the face of the writing.

Our conclusion is, that the instrument set out in the indictment in the case at bar is not such a writing as on its face shows that it might have been used to defraud the Chicago Great Western Railway Company, and that the indictment predicated thereon, which fails to aver such extrinsic facts as to impart to it the fraudulent tendency charged, is not a good criminal pleading and should have been quashed by the court below.

For the error of the trial court in overruling the motion to quash the indictment the judgment is reversed and the cause remanded.                    *Reversed and remanded.*