THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GLEN A. REYNOLDS, Defendant-Appellant.

Fifth District    No. 79-119

Opinion filed June 19, 1980.

550

John R. Reid and Gary D. Duncan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Glen Reynolds, was tried by jury in the Circuit Court of St. Clair County on an indictment charging him with forgery. He was convicted and received a sentence of four years imprisonment.

The evidence at trial shows that on August 19, 1978, at approximately 1:30 p.m., defendant entered Gordon's Jewelers, a store located in the St. Clair Square shopping center in Fairview Heights, Illinois, and requested that a clerk show him some rings. He viewed several rings over a five-minute time span and selected one valued at $395. He indicated that he wished to purchase the ring by credit card and produced a VISA card bearing the name Walter Salsman. The clerk wrote up the sale on a counter sales slip as well as on a VISA sales draft which she presented to the credit manager for approval. She then left the store and went to lunch.

The credit manager asked defendant to sign the VISA sales draft after it was imprinted with the card. Defendant wrote the first four letters of the name displayed on the card, paused momentarily, and then continued with the rest of the signature. Since the transaction was for an amount exceeding $50, the credit manager telephoned VISA to obtain a credit check on the account number displayed on the card. While on the telephone with a VISA representative pending the credit check, the credit manager asked defendant for additional identification because her suspicion had been aroused due to his hesitancy in signing the draft. Defendant responded that he was carrying no driver's license, but he did produce two other credit cards bearing the same name as that on the VISA card, Walter Salsman. The credit manager compared the signatures on the other two cards with the signature on the VISA draft. The VISA card was not used in the handwriting comparison because it was unsigned. The credit manager noticed that the signature on the draft differed markedly from those on the other credit cards. The disparity in signatures led her to suspect that the three cards were stolen, and this suspicion was passed on to the VISA representative over the telephone. The company informed her that the card had not been reported stolen. At this point the store manager interrupted the conversation via an extension telephone and asked the credit manager if she thought the VISA card was stolen. When she replied affirmatively, the store manager called the police. Defendant was detained a few minutes on the pretext that the VISA computer was not functioning, but he then left.

A police officer responding to the call noticed defendant running up

an escalator located a short distance from the jewelry store. Defendant matched the description given of the man who had attempted to make the purchase in the jewelry store. After a short chase, the officer apprehended defendant and escorted him to the store where he was identified by the credit manager. Other police officers called to the scene retraced the route defendant used in fleeing the store and discovered several credit cards bearing the name Walter Salsman in a planter approximately 12 feet from the top of the escalator.

Defendant's conviction and sentence led to this appeal in which defendant raises the following issues: (1) whether the indictment is fatally defective where it failed to contain averments of extrinsic facts demonstrating the sales draft's apparent capacity to defraud; (2) whether the prosecuting attorney invaded the province of the jury where he argued that a credit card sales draft is, as a matter of law, a document apparently capable of defrauding; (3) whether the trial court erred by failing to give *sua sponte* a jury instruction defining a document apparently capable of defrauding; and (4) whether the trial court erred in denying defendant's motion *in limine* which sought the exclusion of evidence relating to a prior crime.

Initially, defendant asserts that the indictment is fatally defective because it does not aver extrinsic facts sufficient to demonstrate the apparent capacity of the VISA sales draft to defraud. Allegations of fact which defendant deems essential to a properly pleaded indictment are the existence of a valid credit card, the existence of a line of credit from the VISA company to the designated cardholder, and the use of such credit card by defendant. The State contends, however, that apparent capacity to defraud is evident on the face of the sales draft which is attached to the indictment and incorporated in it by reference, thereby dispensing with the need to plead extrinsic facts.

The indictment reads in pertinent part as follows:

"* * * [T]hat the said defendant, with the intent to defraud, knowingly made a document apparently capable of defrauding another, in that it purported to have been made by another, Walter Salsman, a copy of the document is attached hereto and made a part hereof by reference thereto, said document being a sales draft of the VISA Credit Card Company, dated August 19, 1978, and signed as maker, Walter Salsman, in violation of Paragraph 17—3(a)(1) Chapter 38, Illinois Revised Statutes."

The attached copy of the sales draft states, "The issuer of the card identified on this item is authorized to pay the amount as shown as TOTAL upon a proper presentation."

■■ It is well settled in Illinois that in an indictment for forgery, the instrument which is the subject of the charge must show on its face an

apparent capacity to defraud another; otherwise, the indictment must include averments of extrinsic facts establishing such a capacity. (*People v. Dismore* (1975), 33 Ill. App. 3d 495, 342 N.E.2d 151; *People v. Moyer* (1971), 1 Ill. App. 3d 245, 273 N.E.2d 210; *Goodman v. People* (1907), 228 Ill. 154, 81 N.E. 830.) The test for determining whether a document is apparently capable of defrauding another is whether a reasonable and ordinary person might be deceived into accepting the document as being true and genuine (*People v. Kent* (1976), 40 Ill. App. 3d 256, 350 N.E.2d 890). In the language of section 17—3(c) of the Criminal Code, "[a] document apparently capable of defrauding another includes, but is not limited to, one by which any right, obligation or power with reference to any person or property may be created, transferred, altered or terminated." (Ill. Rev. Stat. 1977, ch. 38, par. 17—3(c). *Cf. People v. Dismore; People v. Roberts* (1975), 27 Ill. App. 3d 489, 326 N.E.2d 116.) Thus, the document's capacity to defraud another need only be apparent, not actual. *People v. Kent.*

The issue of the capacity of a credit card sales slip to defraud has been addressed in *People v. Roberts.* The defendant in *Roberts* was charged with forgery arising out of his fraudulent use of a credit card to purchase gasoline. The indictment alleged that he delivered a falsely made document, a credit card sales slip, with intent to defraud. The sales slip was set out in the indictment *in haec verba* and attached thereto. Although defendant admitted he was not the authorized user of the card and that the signature on the slip was not that of the authorized user, he asserted on appeal that the sales slip was not an instrument capable of defrauding another. He argued that the indictment was rendered fatal by its failure to allege the existence of a valid credit card. In rejecting this argument, the court noted that the sales slip bore the name, account number and signature of the authorized card user and that a reading of the slip showed that a contract was entered into by the parties. The court found the credit card sales slip analogous to a fully completed personal check and reasoned that a charge of forging a personal check could be sustained without reference to a bankbook or other designation associating the person held out to be the maker of the check with the bank upon which the check is drawn. In discussing the analogy between a forged check and a forged gasoline credit card sales slip, the court observed that the credit card itself, like the bankbook, simply establishes that there is a line of credit. The credit card sales slip, like the check, purports to make use of that credit. The *Roberts* court concluded that a charge of forging a gasoline credit card sales slip could be sustained without reference to a valid credit card or line of credit between the credit card company and the pretended maker of the credit card sales slip. The *Roberts* court held that the gasoline credit sales slip possessed the requisite apparent capacity

to defraud and that the indictment sufficiently charged defendant with the offense.

We find *Roberts* apposite to the instant case. Although the VISA credit card itself was unsigned, the VISA card sales draft, set forth in the indictment, like the gasoline credit card sales slip in *Roberts*, bears the name, account number and signature of the authorized card user. Moreover, the sales draft discloses the agreement between the parties to it by obligating the VISA company as issuer of the card to reimburse Gordon's Jewelers for the $395 item listed on the draft and, in turn, by obligating the card user to reimburse VISA company. A reasonable person could conclude under these circumstances that the sales draft is capable of defrauding. The trial court in the instant case held, as in *Roberts*, that it is the credit card sales slip, and not the credit card itself, that is the document capable of defrauding another. Therefore, it is of no consequence that the credit card was not signed.

Defendant relies on *People v. Dismore* in contending that the sales draft is mere evidence of indebtedness and not capable of defrauding. We find *Dismore* distinguishable from the case at bar because there the documents supporting the various forgery counts in the indictment consisted of a guest registration card, restaurant checks and a balance statement. The court found these documents to be similar to sales receipts and concluded that they were merely evidence of an indebtedness because the documents did not create, transfer, alter or terminate any right, obligation or power with respect to any person or property. The same is not true of the sales draft in the instant case. It was not merely evidence of an indebtedness. It purported to obligate the VISA company as issuer to reimburse the designated merchant for the price of the item listed on the draft. If any credit was extended by reason of defendant's criminal act, it would have been an extension of credit by Gordon's Jewelers to the VISA company and not either to defendant or to the authorized card user.

■■ For the foregoing reasons, we hold that the sales draft on its face is complete and creates a legal obligation and is sufficient to support an indictment for forgery.

The second issue raised by defendant is that the prosecutor improperly invaded the province of the jury through statements made in closing argument. One assignment of error consists of the following statements:

> "MR. LeCHIEN [Prosecutor]: He has made some points about is this document capable of defrauding another. Well, ladies and gentlemen, this document absolutely is capable of defrauding another. The reason is that that document is in and of itself that kind of piece of paper that can do that. It is just like a check. He

said that because this thing wasn't signed, that somehow that document isn't any good. Ladies and gentlemen, you know that that is not true.

\* \* \*

MR. LeCHIEN: Ladies and gentlemen, he is saying because this—the witness said that it has got something to do with the validity of the thing, if it is not signed, then that doesn't make it forgery. There is no issue about any credit card in this case, ladies and gentlemen. It is the document, this document on its face is capable of defrauding another. He had the item in his control. He was about ready to make off with it. He was caught forging the document. That is the only thing you are concerning [*sic*] with is this document. This other stuff is extraneous. It doesn't make a difference. It is like saying that it is not forgery if there is no money in your account, something like that."

None of the above statements elicited an objection from defense counsel. The prosecutor went on to argue:

"MR. LeCHIEN: He got caught, ladies and gentlemen, and the evidence has shown that he forged that VISA sales slip. The law is clear that that document is capable of defrauding another.

MR. HAMMAN [Defense Counsel]: Your Honor, I would object to that. I believe the law is not clear on that point.

MR. LeCHIEN: I submit the case People v. Roberts.

THE COURT: Objection overruled. Proceed."

Defendant contends that these statements were in error since they inaccurately instructed the jury that the sales draft, as a matter of law, was apparently capable of defrauding. He relies on *People v. Kent* in asserting that the determination of the fraudulent capacity of the sales draft is a question of fact for the jury.

■■ We would point out initially that any error associated with the first set of statements cited by defendant is waived by defense counsel's failure to object (*People v. Adams* (1968), 41 Ill. 2d 98, 242 N.E.2d 167), and we will address ourselves solely to the latter exchange involving the prosecutor, defense counsel, and the court.

We agree with defendant's assertion that the capacity of the sales draft to defraud is a question of fact to be decided by a jury. (*People v. Kent.*) The prosecutor's statement, "The law is clear that that document is capable of defrauding another," was in error, and his reliance on *Roberts* was unfounded. *Roberts* ruled on the capacity of a credit card sales slip only in the limited context of testing the sufficiency of a forgery indictment based solely upon a credit card sales slip.

■■ Although error was committed, we find it harmless under the facts and circumstances of this case. A conviction will not be reversed merely

because error has been committed by the trial court unless it appears that justice has been denied or that the verdict of the jury may have resulted from such error. (*People v. Ballard* (1978), 65 Ill. App. 3d 831, 382 N.E.2d 800.) The thrust of the defense as asserted by counsel in closing argument was that the State failed to prove that the sales draft was a document apparently capable of defrauding. The rationale for such a defense being that the VISA credit card was unsigned and therefore invalid. However, as we previously have stated, proof of a valid credit card is not a necessary element of a forgery offense. It was convincingly established at trial that defendant criminally purported to make use of another's credit with the VISA company. The evidence consisted of the sales draft bearing the name, account number and signature of the authorized user, which purported to obligate the VISA company to pay the amount shown on the draft upon presentation. This evidence is sufficient to support beyond a reasonable doubt the conclusion that the sales draft possessed apparent capacity to defraud, and the error committed by the court is harmless. In the face of the overwhelming evidence of defendant's guilt, it cannot be said that justice has been denied or that the verdict of the jury may have resulted from such error.

Finally, defendant takes issue with certain prosecutorial statements making use of the word "technicality."

"MR. LeCHIEN: * * * Are you going to go into your jury room and deliberate and say he is not guilty of Forgery because of some technical thing with the signature on the card?

MR. HAMMAN: Your Honor, I object to that. I feel it is not a technical thing that we are dealing with here.

THE COURT: Objection sustained. Rephrase that statement.
* * *
MR. LeCHIEN: Ladies and gentlemen, whether it is technical or not, but I think it is.

MR. HAMMAN: I object.

THE COURT: Sustained.

MR. LeCHIEN: He can't get away. You do not get a freebee because somebody has not signed that. Ladies and gentlemen, don't be concerned with that issue. The fact is—

MR. HAMMAN: Your Honor, I object.

THE COURT: Let's hear what he has to say.

MR. LeCHIEN: The document speaks for itself and if you don't thing [*sic*] that that document is capable of defrauding another, then no check you ever wrote would be so and I would ask you to return a verdict of builty [*sic*] of Forgery in this case based on the evidence and the undisputed evidence in this case."

Defendant contends that the prosecutor repeatedly and persistently

placed his own personal views as to defendant's guilt before the jury, and in so doing, has implied that defense counsel was employing a defense designed with trickery or artifice in mind.

Generally, when a trial court sustains an objection to a statement made by a prosecutor in closing argument and instructs the jury to disregard the statement, any error in argument is cured. (*People v. Hamilton* (1975), 27 Ill. App. 3d 249, 327 N.E.2d 35.) Here, the statements of the prosecutor were promptly objected to and the objections were promptly sustained; however, the court did not further admonish the jury to disregard such statements. In spite of the error committed by the trial court, we do not agree with defendant that these statements so prejudiced defendant as to constitute reversible error. In the face of overwhelming evidence of defendant's guilt, the error is, in our opinion, harmless under the standard set out in *People v. Ballard.*

■■ Defendant's third contention is that the trial court erred in failing to give, *sua sponte*, a jury instruction defining a document apparently capable of defrauding. However, defendant failed to raise this issue in his post-trial motion or in his motion for arrest of judgment. Therefore, as the State correctly notes, defendant is precluded from raising the issue before this court.

■■ It is a well-established rule of law in Illinois that points of error must be raised in a post-trial motion if they are to be considered on review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Harrawood* (1978), 66 Ill. App. 3d 163, 383 N.E.2d 707.) This rule applies to instructional issues as well as to other issues. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) Further, defendant's failure to submit the definitional instruction gives rise to the application of another waiver rule. In *People v. Allen* (1976), 35 Ill. App. 3d 342, 347, 341 N.E.2d 431, 435, this court stated:

> "If an accused wishes certain instructions to be given, he should offer them and request the court to give them, since the trial court is under no duty to give instructions on its own motion. *People v. Meeks*, 11 Ill. App. 3d 973."

Therefore, the trial court did not err in failing to give a jury instruction, *sua sponte*, defining what constitutes a document apparently capable of defrauding another.

Finally, defendant assigns as error the trial court's denial of his motion *in limine* which sought the exclusion of testimony concerning a prior theft of the VISA card used in the commission of the instant offense. The objectionable testimony pertained to a burglary of Walter Salsman's apartment several hours prior to the incident at Gordon's Jewelers. At trial, Salsman stated that his apartment was robbed while he was away at work on August 19, 1978. He felt that entry was gained to the apartment

sometime between 10:30 and 11:30 a.m. with the aid of a key taken from the apartment manager's office. The items seized from the apartment consisted of cash, jewelry, and credit cards, including the VISA card used by defendant. He testified that he had given no one permission to use the VISA card. Defendant contends that this evidence is highly prejudicial since it communicates to the jury the inference that defendant not only committed forgery but burglary as well. Furthermore, defendant asserts that the evidence does not fit within any exception to the general rule of excluding evidence of prior or unrelated offenses, because the evidence fails to demonstrate motive, intent, identity, absence of mistake or *modus operandi* with respect to the crime of forgery. We do not agree that the exceptions to the general rule excluding evidence of prior unrelated offenses are limited to those specified by defendant.

The general rule governing the admission of evidence of other crimes was stated by our supreme court in *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489, 492-93:

> "It is, of course, generally true that evidence of extra-indictment offenses, that is, evidence of crimes other than the one for which the accused is being tried, is not admissible, but there are situations of exception. Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense. [Citations.]"

In the case at bar, two of the elements the State must prove in order to sustain a conviction of forgery are defendant's intent to defraud and his making or altering of a document apparently capable of defrauding another. (Ill. Rev. Stat. 1977, ch. 38, par. 17—3(a)(1).) The evidence relating to the burglary of the Salsman apartment demonstrates that the seizure of the VISA card and its subsequent use occurred without the card owner's authorization. Thus, the fact that the credit card had been stolen in a burglary is probative of defendant's unauthorized use of the VISA card. Without this evidence, the State's case may have been damaged by speculation by the jury that defendant acted pursuant to authority vested in him by the card owner. If the State is held to a standard of reasonable doubt, it must be given a fair opportunity to prove each element of its case. Further, the fact that Mr. Salsman's credit card was stolen in a burglary does not necessarily lead to the conclusion that it was defendant who committed the burglary and stole the card.

We therefore hold that the reference at trial to the burglary was proper under *McDonald* and conclude that the trial court did not err in its denial of the motion *in limine.*

For the foregoing reasons, we affirm the conviction and sentence of the Circuit Court of St. Clair County.

Affirmed.

JONES, P. J., and SPOMER, J., concur.