THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN PANAGIOTIS, Defendant-Appellant.

First District (1st Division)   No. 86—0024

Opinion filed September 28, 1987.—Rehearing denied November 23, 1987.

George Patrick Lynch and M. Jacqueline Walther, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula Carstensen and Eugene Hollander, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial, defendant, John Panagiotis, district sales manager for U.S. Air, Inc., was convicted of eight counts of forgery and two counts of theft, arising out of his issuance of free airline tickets to barter companies in exchange for promotional items. Defendant was sentenced to concurrent terms of 30 months' probation, with 250 hours of public service during the first 18 months of probation, a $2,000 fine, costs, and 90 days in Cook County jail following two years of probation. On appeal, defendant contends that: (1) the indictment under which he was charged was void due to its failure: (a) to adequately describe the allegedly stolen property in the theft counts; and (b) to adequately describe how the airline tickets were capable of defrauding third parties in the forgery counts; (2) the State failed to prove him guilty beyond a reasonable doubt of theft and forgery; and (3) in the alternative, one of the convictions must be vacated because both arose out of the same physical act. For the following reasons, we vacate the theft conviction, affirm the forgery conviction, and remand the cause for resentencing.

The record sets forth the following facts pertinent to this appeal. In 1979, defendant was hired as the Chicago area district sales manager for U.S. Air, Inc., by James Disanto, director of sales for U.S. Air. Defendant's district sales office (DSO) was located at 333 N. Michigan Avenue, where he worked with Jan Erbling, office secretary, and Len Kyle, sales representative. The duties of a district sales manager for U.S. Air include managing people, calling on accounts, collecting information, and engaging in promotional activities. A district sales office is an administrative office only. It does not have authorization to issue airline tickets. Instead, tickets are issued at city ticket offices (CTO), airport ticket offices (ATO) or travel agencies. However, a district sales office is authorized to offer free promotional tickets provided that company policy is followed.

U.S. Air policy requires that several approval steps be followed before a free promotional ticket is issued. First, the sales manager must agree that the promotion is worthwhile to U.S. Air. Then the regional sales director and either the director of field sales or the director of sales planning at the Washington office must approve the promotion. Barter transactions, whereby U.S. Air trades airline tickets for other items or services, must be approved by the senior vice-president of finance and the senior vice-president of marketing. Once a barter transaction is approved, the district sales office is notified. The district sales manager then issues an "S.A. 55" authorization form to either the airport ticket office or the city ticket office for ticketing. This policy has been in effect since 1981.

Jan Erbling, defendant's office secretary, testified that at defendant's direction, she had issued hundreds of U.S. Air tickets and had validated them with plates marked: "U.S. Air, Inc. Chicago, IL ATO 01" and "U.S. Air, Inc. Chicago, IL ATO 02," even though the Michigan Avenue office is not an airline ticket office as the "ATO" designation indicates. Either defendant or Len Kyle, the sales representative, supplied the blank ticket stock and brought the validator plate and validator tabs into the Michigan Avenue office. In addition, defendant had signed the SA-55 authorization forms indicating that issuance of the tickets had been approved by the director of field sales.

Stephanie Carter, lead agent at the U.S. Air airport ticket office, testified that validating plate "ATO 01," used by defendant's office, had been replaced in April 1981 by plate "ATO 17." The "ATO 01" plate was to have been destroyed at that time. In addition, validating plate "ATO 02," also used by defendant's office, had been reported lost and had been replaced with plate "ATO 06." Carter further stated that plates bearing the letters "ATO" were to be used only at

airline ticket offices.

James Disanto, director of sales for U.S. Air through 1982, testified that a district sales manager, such as defendant, was not authorized to either issue airline tickets or to order a CTO ticket validating plate unless there was a city ticket office (CTO) in that sales manager's district. There was no CTO in defendant's district. Disanto further stated that defendant had never told him about his transactions with the barter companies. Confirming Disanto's testimony, Robert Parker, Disanto's successor, testified that defendant had never been authorized to either purchase validator plates or to issue free tickets.

Loren Kennedy, manager of Chicago Trade Line, a barter exchange, testified that he had conducted business with defendant from mid-1982 to 1983. Chicago Trade Line's member companies traded goods and services with each other. Chicago Trade Line then received commissions on the trades. During Chicago Trade LIne's association with defendant, it had received approximately 19,000 to 20,000 free U.S. Air airline tickets in exchange for jewelry, home items, video cassette recorders, rental cars, and restaurant coupons, which defendant either picked up himself or had delivered to his house.

Deborah Baxter, manager of Marketing Decisions, another barter company, commenced business with defendant in September 1982. Marketing Decisions acted as a middleman in negotiating trades of goods and services between companies. Originally, Baxter proposed a trade with defendant of advertising in exchange for airline tickets. Although Baxter received the airline tickets, the advertising was never placed. Instead, in exchange for the airline tickets, Baxter allowed defendant use of Baxter's charge account with Barter Systems, another barter company. Defendant used the account to acquire poinsettia plants as gifts for his employees during the holiday, restaurant credits, and televisions. In June 1983, defendant asked Baxter to prepare a fictitious statement indicating that advertising had been placed. As the result of an internal audit of the Chicago district sales office in June 1983, defendant was arrested for the theft and forgery of airline tickets from U.S. Air, Inc. Following a bench trial, he was convicted of both offenses and sentenced. Defendant appeals his convictions.

■■ Defendant first contends that the indictment which charged him with theft and forgery was void due to its failure to specifically describe the nature and elements of the offenses charged. In both a pretrial motion to quash the indictments and a post-trial motion in arrest of judgment, defendant alleged that the indictments were void due to vagueness. The trial court denied both motions.

The standard for review of the sufficiency of a charging instrument which has been objected to at trial is whether the nature and elements of the offenses charged are in accordance with section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 111—3). (See *People v. Lutz* (1978), 73 Ill. 2d 204, 213, 383 N.E.2d 171.) Section 111—3(a) provides:

"(a) A charge shall be in writing and allege the commission of an offense by:

(1) Stating the name of the offense;

(2) Citing the statutory provision alleged to have been violated;

(3) Setting forth the nature and elements of the offense charged;

(4) Stating the date and county of the offense as definitely as can be done; and

(5) Stating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty." Ill. Rev. Stat. 1985, ch. 38, par. 111—3.

With respect to the theft counts (counts II and IV), defendant contends that the description of the allegedly stolen property failed to adequately apprise him of the precise items at issue so as to enable him to prepare a defense and to safeguard his rights against double jeopardy. Specifically, count II alleged that during the period from June 1, 1983, to approximately July 1, 1983, defendant obtained or exerted unauthorized control over two or more U.S. Air airline tickets, valued at approximately $23,000, intending to deprive U.S. Air permanently of the use and benefit of the tickets. Count IV alleged that defendant and Deborah Baxter of Marketing Decisions, during the period from May 1, 1982, to approximately July 1, 1983, obtained or exerted unauthorized control over two or more U.S. Air airline tickets, valued at approximately $42,000, intending to deprive U.S. Air permanently of the use and benefit of the tickets.

■ It is well established that a person accused of a crime should be fully informed by the indictment of all the material facts relied upon to establish the offense with which he is charged. The property over which unauthorized control is alleged to have been obtained or exerted should be described with a degree of certainty that will enable the court to determine whether the evidence offered in support of the charge relates to the property on which the indictment is founded, thus preventing a person from being tried for an offense other than that for which he was indicted and enabling him to plead

the judgment in bar of another prosecution for the same offense. *People v. Gilmore* (1976), 63 Ill. 2d 23, 344 N.E.2d 456; *People v. Graves* (1928), 331 Ill. 268, 162 N.E. 839.

In the present case, as previously indicated, the two theft counts in the indictment describe the property allegedly taken by defendant as "U.S. Air Airline tickets" with an approximate dollar value. The quantity of tickets at issue in each count is described as "over 2 or more" and the time periods in each count overlap. In our view, this description fails to adequately describe the allegedly stolen property. We agree with defendant that the descriptions of the property are so vague that he "may well have been convicted of two counts of theft on the basis of the same conduct," in violation of the one-act-one-crime doctrine set forth in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838. On the face of each count, there is no way to tell which count refers to which tickets. The only clue to distinguishing which tickets are the subject of which counts is the fact that count IV was brought against both defendant and Deborah Baxter of Marketing Decisions. Thus, it could be assumed that count IV is limited to the tickets issued to Marketing Decisions. However, in our view, the subject matter of the counts should be apparent on their face and clarifications should not depend upon extrinsic information made available through subsequent discovery or testimony at trial. To rely on the latter undermines the right to due process. Accordingly, we conclude that the theft counts in the indictment were void due to vagueness and the trial court erred in denying defendant's pretrial motion to quash and his post-trial motion in arrest of judgment with respect to the theft counts.

Next, defendant contends that the forgery counts were insufficient on the grounds that: (1) the airline tickets were marked "Free" and, thus, did not show on their face an apparent capacity to defraud third parties, and (2) there were insufficient extrinsic factual averments in the counts to demonstrate an apparent capacity to defraud U.S. Air. In response, the State maintains that the term "airline ticket" used in the indictments gives rise to the inference that the ticket had the capacity to be used and, thus, to defraud another. With respect to the sufficiency of the factual averments, defendant argues that the forgery counts stated that the defendant had acted without authority and also displayed a copy of the forged ticket.

In an indictment for forgery, the instrument which is the subject of the charge must show on its face an apparent capacity to defraud another, or, if it does not, the indictment must include averments of extrinsic facts which establish that capacity. (*People v. Toolen* (1983),

116 Ill. App. 3d 632, 451 N.E.2d 1364.) The test for determining whether a document is apparently capable of defrauding another is whether a reasonable and ordinary person might be deceived into accepting the document as true and genuine (*People v. Reynolds* (1980), 85 Ill. App. 3d 549, 553, 407 N.E.2d 64), and whether it creates, transfers, alters or terminates any right, obligation or power with reference to any person or property (Ill. Rev. Stat. 1985, ch. 38, par. 17—3(c)). In our view, this test has been satisfied in the present case. By defendant's own admission, the tickets appear on their face to be genuine free promotional tickets. However, they were not genuine because they had been issued without authority. In addition, the tickets created the obligation for U.S. Air to provide transportation to the ticket holder, at least until the fraud was discovered.

In support of his position that the forgery counts did not show a capacity to defraud, defendant relies on *Goodman v. People* (1907), 228 Ill. 154, 81 N.E. 830. In *Goodman*, defendant was indicted jointly with two others for forging a railroad pass. Defendant appealed his conviction arguing that the indictment was insufficient because the railroad pass did not indicate on its face a capacity to defraud and there was no averment of extrinsic facts to aid the court in determining any fraudulent character. The *Goodman* court noted that the pass indicated on its face that it was to be used for travel between all stations, but found that without an averment that the company owned or operated railroad lines over which people could travel, the company could not be defrauded by persons offering the pass for transportation. The court reasoned that the existence of a railroad is not a fact of which courts take judicial notice. Thus, the fact that the company owned or operated railroad lines had to be averred in the indictment. In addition, although the indictment had included the exact language of the pass, including the signature line, "Sam E. Stickney, General Manager," because it was not specifically stated that Stickney was general manager of the railroad company, the indictment did not, on its face, show a capacity to defraud the railroad. Accordingly, the court held that the indictment was insufficient and should have been quashed.

■ Initially, the *Goodman* holding would seem to require the forgery counts in the present case to indicate that U.S. Air owned airplanes that actually flew to the destinations indicated on the tickets. However, although *Goodman* has never been expressly overruled, it is clear from more recent cases that the strict requirements of *Goodman*, decided in 1907, have been relaxed. Under current standards, the sufficiency of an indictment is determined by the substance of the

charge and judged by common sense and reason rather than by linguistic technicalities. (*People v. Powell* (1978), 72 Ill. 2d 50, 377 N.E.2d 803; *People v. Locascio* (1985), 137 Ill. App. 3d 201, 484 N.E.2d 451.) Thus, we find *Goodman* unpersuasive.

■ In addition, we find defendant's analogy to *People v. Dismore* (1975), 33 Ill. App. 3d 495, 342 N.E.2d 151, equally unpersuasive. In *Dismore*, the court found that forged restaurant checks, motel balance statements and guest registration cards created an indebtedness, not a right, obligation or power. (Ill. Rev. Stat. 1985, ch. 38, par. 17—3(c).) By contrast, in the present case, the airline tickets created the right of the holder of the tickets to have free air transportation and the obligation of U.S. Air to provide the transportation. In our opinion, the present case is more analogous to *People v. Reynolds* (1980), 85 Ill. App. 3d 549, 407 N.E.2d 64 (forged sales draft on its face creates legal obligation), and *People v. Toolen* (1983), 116 Ill. App. 3d 632, 451 N.E.2d 1364 (forged requisitions for auto parts created the right to purchase auto parts from offeror), in which the charging instruments were found to have sufficiently alleged forgery. Accordingly, we conclude that the forgery counts in the present case were sufficient and the trial court properly denied defendant's pretrial motion to quash and his post-trial motion in arrest of judgment with respect to the forgery counts.

■ ■ Next, defendant contends that the State failed to prove him guilty of theft and forgery beyond a reasonable doubt. Our decision to vacate the theft conviction renders the reasonable doubt issue as to theft moot. Thus, we confine our analysis of this issue to the forgery counts.

Pursuant to section 17—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 17—3):

"(a) A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority; or

(2) Issues or delivers such document knowing it to have been thus made or altered; or

(3) Possesses, with intent to issue or deliver, any such document knowing it to have been thus made or altered.

(b) An intent to defraud means an intention to cause another to assume, create, transfer, alter or terminate any right,

obligation or power with reference to any person or property.

(c) A document apparently capable of defrauding another includes, but is not limited to, one by which any right, obligation or power with reference to any person or property may be created, transferred, altered or terminated."

Defendant maintains that the State failed to show that he had had the requisite intent to defraud or that he had acted without authority in issuing the free airline tickets. Preliminarily, we note that defendant's statement that his duties as district sales manager included providing free tickets for promotional campaigns is misleading. Pursuant to the testimony of John Disanto, Brian Dwyer and Robert Parker, a district sales manager for U.S. Air may only offer tickets for promotional purposes if he has received prior approval from management to extend the offer. Ticketing offices, not sales offices, have sole authority to issue tickets. Thus, although defendant may have had the authority to offer free tickets, he did not have the authority to actually provide the tickets.

Defendant further claims that his practice of issuing free tickets was ratified by U.S. Air. The record, however, does not support this contention. In order for ratification to have occurred, U.S. Air management would have had to have had actual or constructive knowledge that defendant had been issuing free tickets. There is no evidence of such knowledge. In fact, there is directly contradictory evidence.

In arguing that U.S. Air had ratified his actions, defendant sets forth the following factual circumstances. First, defendant claims that U.S. Air paid for two of the airline ticket validator plates with the designations "CTO 01" and "CTO 02" that he had ordered from Mass Mailing. John Sanderson of Mass Mailing testified that although U.S. Air had paid for the plates, the invoice could have been sent to defendant's Chicago office rather than to U.S. Air's corporate headquarters. In that case, payment of the invoice would not indicate knowledge of U.S. Air management that the plates had been ordered. Moreover, other than providing evidence that defendant had superseded his authority by ordering validator plates, the "CTO" plates are not relevant to the situation at bar because the subject airline tickets were validated with an "ATO" plate, not a "CTO" plate.

As further evidence of U.S. Air's purported knowledge of his activities, defendant contends that a log was kept at U.S. Air's O'Hare office as to the issuance of blank ticket stock to defendant. Testimony indicated that the log showed "CTO, John Panagiotis," indicating that defendant had taken the tickets for a city ticketing office (CTO). How-

ever, defendant's office was not a CTO, it was a DSO, or district sales office, which had no authority to issue tickets. Thus, logging the issuance of tickets to a CTO would not alert U.S. Air management that a DSO was issuing tickets contrary to company policy.

Defendant further explains that whenever a free ticket was issued, a supporting SA-55 authorization form was prepared and sent to the accounting office. However, testimony indicated that all of the SA-55 forms were signed by defendant, fraudulently indicating that they had been approved by the director of field sales. Thus, even if the SA-55 forms can be construed as constructive notice to U.S. Air of the transactions, they did not provide notice to U.S. Air management that defendant had been acting without the authority of immediate superiors. In fact, Dwyer, Disanto, and Parker, defendant's superiors, testified that they had had no knowledge that defendant had been issuing tickets.

In addition, defendant's reliance on *Chalet Ford, Inc. v. Red Top Parking, Inc.* (1978), 62 Ill. App. 3d 270, 379 N.E.2d 88, in support of his ratification argument is misplaced. In *Chalet Ford*, Ken Hall, a Chalet Ford employee, parked his company automobile in defendant's lot, paid the attendant the fee plus gratuity, and left the car keys with the attendant, who was to park the car and warm it up shortly before Hall was to return from a hockey game. Even though signs were posted in the lot which indicated that attendants had no authority to accept keys from the patrons, Hall had been following this practice for four years and had seen other patrons doing the same thing. When Hall returned from the game, the automobile was gone.

The parking lot argued that the attendant had acted without authority in accepting the keys and no bailment relationship had been created. Specifically noting that there had been three managers working at the parking lot while this unauthorized practice was taking place, the *Chalet Ford* court found that defendant had ratified its attendant's conduct because defendant's business had been operated in such a way that defendant knew or should have known that the attendants did not act in accordance with company policy.

In the present case, the evidence does not indicate that U.S. Air management was aware of defendant's practice of issuing tickets. His actions in procuring the blank ticket stock and sending SA-55 forms appeared to be in conformance with company policy. Accordingly, in our view, the evidence supports a conclusion that defendant had acted without authority and there was no ratification of his actions.

Regarding the intent to defraud element of the forgery offense, defendant refers this court to his argument presented with respect to

the intent element of theft. In doing so, defendant offers no legal authority to adapt the theft argument to the forgery offense. Instead, he relies solely on inappropriate case law which addresses issues related to the offense of theft. In his theft argument, defendant maintained that because the majority of the items received in exchange for the U.S. Air tickets could have been used for business purposes, there is a lack of showing of his intent to permanently deprive U.S. Air of its property. Apparently, defendant believes this argument also indicates that he lacked intent to defraud. We are not convinced.

In criminal cases where the intent of the accused is material to the issue, intent may be proven by direct evidence, such as testimony of the accused, or deduced from acts and circumstantial evidence. (See *People v. Suerth* (1981), 97 Ill. App. 3d 1005, 423 N.E.2d 1185; *People v. Bazzelle* (1970), 130 Ill. App. 2d 131, 264 N.E.2d 457.) In the present case, all of the items received in exchange for the airline tickets were either picked up by defendant personally or delivered to his home. Other than the delivery of poinsettia plants to other U.S. Air employees, there were apparently no direct deliveries to other recipients. Further, shortly before defendant's arrest in June 1983, he wrote a letter to Marketing Decisions, requesting Deborah Baxter to write a fictitious statement indicating that advertising had been received in exchange for airline tickets. In our view, this action is indicative of an attempt by defendant to conceal the actual exchanges made. In light of all the evidence, we find that the trial court properly found that defendant was guilty of forgery beyond a reasonable doubt. Finally, our decision to vacate the theft counts obviates the need to address defendant's argument that both the forgery offense and the theft offense arose out of the same physical act.

Based upon the aforementioned, we vacate the conviction of theft, affirm the conviction of forgery, and remand the cause for resentencing.

Affirmed in part; vacated in part; and remanded for resentencing.

BUCKLEY and O'CONNOR, JJ., concur.