THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES BRADLEY, Defendant-Appellant.

(No. 53559;

First District—December 7, 1970.

Gerald W. Getty, Public Defender, of Chicago, (Nunzio Dan Tisci and James N. Gramenos, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Michael Goldstein, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

The defendant, James Bradley, was indicted and charged with the crimes of burglary and of possession of burglary tools. He went to trial before the Court without a jury. After the State rested its case in chief, the Court directed a finding of not guilty in favor of the defendant on the charge of possession of burglary tools. At the conclusion of the trial the defendant was found guilty of burglary and was sentenced to serve three to ten years in the Illinois State Penitentiary.

The defendant contends, on appeal, (1) that he did not "understandingly" waive his right to trial by jury, (2) that the trial judge shifted the burden of proof to him by requiring him to prove his innocence, and (3) that the trial court attached too much weight to his prior conviction in assessing his credibility as a witness.

The evidence reveals that at about 4:00 A.M. on March 25, 1968, Hildred Bush heard strange sounds emanating from a pool hall located at 1508 South Pulaski Avenue in Chicago, and that he reported this to the police. Two police officers testified that they arrived at the pool hall, shone a flashlight through a window, and saw the defendant "crouched behind a file cabinet." They told the defendant to come out of the pool hall with his hands raised. He did, and they placed him under arrest. The police telephoned Henry Brown, the operator of the pool hall and when Brown arrived he inspected the premises. The front door was open and the back door lock had been removed. The juke box was turned around and had marks on it "like pieces of wood were broke." A hammer and screwdriver which Brown had never seen before were lying on the floor near where the police first saw the defendant crouching.

The defendant testified that he had been drinking excessively. After he left a tavern at about 3:15 A.M., he saw three persons running out of a doorway. One of them bumped into him, and he fell between two

automobiles. Police officers then came and arrested him while he was on the sidewalk. He denied having a screwdriver or hammer.

The defendant contends that he did not "understandingly" waive his right to jury trial. The record reveals that prior to trial the defendant moved to suppress physical evidence and a statement made to a police officer. At that time, the Court asked what kind of trial the defendant wanted, and in the presence of the defendant, his lawyer replied, "This will be a bench trial, your honor." The matter was continued. When the cause was called for trial, the defendant withdrew his motion to suppress the statement because the State had informed him that it did not intend to introduce the statement at trial. The cause was to proceed to trial subject to the motion to suppress the physical evidence when the following colloquy occurred: .

"THE COURT: Mr. Toomin, will you fill out a jury waiver,

MR. TOOMIN: Your Honor, I would ask leave to file instanter a jury waiver signed by the defendant, James Bradley.

THE COURT: You have read that, have you, Mr. Bradley,

THE DEFENDANT: Yes.

THE COURT: Do you know what a jury trial is?

THE DEFENDANT: Yes.

THE COURT: How old are you?

THE DEFENDANT: Thirty-three.

THE COURT: How much education have you had?

THE DEFENDANT: Three years of high school.

THE COURT: And you wish to give up your right to a trial by jury in this case, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Very well, we will sign this.

Proceed."

The right to trial by jury is guaranteed to an accused in a criminal proceeding by the Federal and State Constitutions. This right may be waived provided that the waiver is made "understandingly". (*Patton v. United States* (1930), 281 U.S. 276; Ill. Rev. Stat. 1967, ch. 38, par. 103—6.) A waiver of a jury trial cannot be presumed from a silent record. (*Boykin v. Alabama* (1969), 395 U.S. 238.) It is the duty of the trial court to see that the election to forego a jury trial is expressly and understandingly made by an accused. *People v. Surgeon* (1958), 15 Ill.2d 236, 154 N.E.2d 253.

■■ It is argued that there is no indication in the record that the defendant knew or was informed of the meaning and consequences of a jury trial as compared to a bench trial. A lengthy explanation of the consequences of a jury trial is not a prerequisite to the making of an

"understanding" waiver of a trial by jury. As the Illinois Supreme Court said in *People v. Richardson* (1965), 32 Ill.2d 497 at 500, 207 N.E.2d 453 at 454:

> "Merely because the court did not at length discuss the consequences of the jury waiver does not necessarily require a holding that the waiver was not understandinly made."

There is no specific or defined formula from which to judge whether a waiver is understandingly made. The determination, of necessity, must rest upon the facts of each particular case. *People v. Wesley* (1964), 30 Ill.2d 131, 195 N.E.2d 708.

■■ In the case at bar, the defendant's counsel expressly stated, in open court, that his client desired to have a bench trial. The defendant was 33 years old and had completed three years of high school. He specifically stated that he knew what a jury was. Under these circumstances, we believe that the defendant's jury waiver was "understandingly" made.

The defendant relies heavily upon *People v. Bell* (1968—supplemented 1969), 104 Ill.App.2d 479, 244 N.E.2d 321. In that case, however, the accused made an affirmative statement that he did not understand the nature of a jury trial. The defendant was asked by his counsel whether he knew "what a jury is," and the defendant answered "a what?" In the case at bar, the defendant stated affirmatively that he knew what a jury trial was. See *People v. Greenwood* (1969), 115 Ill.App.2d 167, 253 N.E.2d 72 which also distinguishes *Bell* on this fact.

It is next contended that there have been violations of the fundamental principles that the prosecution in a criminal proceeding has the burden of proving the defendant guilty beyond a reasonable doubt and that the defendant need never prove himself innocent. We disagree that any violation of these principles has occurred.

The record reveals that after the State had presented its evidence, the defendant moved for a directed finding of not guilty both on the charge of burglary and on the charge of possession of burglary tools. The case was adjourned to another date for argument. After the argument, the Court found the defendant not guilty on the charge of possession of burglary tools, but denied the motion for a directed finding on the charge of burglary. When the Court asked whether the defense rested its case, the defendant's attorney requested time to discuss with the defendant whether he would testify on his own behalf. After a discussion with the defendant, his attorney rested because he said that he did not want to jeopardize the record for appeal. The following colloquy then took place:

> "THE COURT: I also want you to understand, I know you do, but I want Mr. Bradley to understand when I deny a motion for a finding

at the close of the State's case it's my opinion the State has proved its case beyond a reasonable doubt on the indictment which I deny the motion on.

MR. TOOMIN: I understand that, Judge.

THE COURT: —and, I don't like to see a man stand moot on a technical ground if he has something he wants to say.

MR. TOOMIN: He does have something he wants to say.

THE COURT: And, of course, I don't want him to waive any of his rights either.

MR. TOOMIN: Well, I am glad we can have that understanding, your Honor, because I do think he does have something to say, but it's going to be a question of credibility of this man as against the police officers and it's going to be something the Court determines upon of course.

THE COURT: Yes, I can decide questions of credibility without having to go into the questions that you have mentioned of ownership or the other issues.

MR. TOOMIN: Well, if that is the case I feel he does have something to say, I just did not want to jeopardize his record in the event this matter has to be appealed because I feel that I have—I am correct on the law but your Honor disagrees. But I still think that this man does have something that he could testify to and he is relying, so to speak on the law as to his innocence, that is, my defense based upon a very technical ground.

But, if the Court would like I would put the man on to testify. It will be very short, brief testimony, if the Court wants to do that today—

THE COURT: —I am not saying you should put him on. I merely want you to understand the implications of my ruling up to this point.

MR. TOOMIN: Well, I am familiar with the—

THE COURT: —And—

MR. TOOMIN: —implications, sir.

THE COURT: And also realize although the State has the burden of proof to prove a man guilty beyond all reasonable doubt, once they have accomplished that the burden then shifts over to the defendant to raise a reasonable doubt.

MR. TOOMIN: True.

THE COURT: —in that case since the burden is yours, if you don't go forward the result is crystal clear.

MR. TOOMIN: It was clear to me.

THE COURT: —sufficiently clear.

MR. TOOMIN: And I know the Court's policy."

■ At the close of the State's case in chief, the defendant moved for a directed finding of not guilty on the burglary charge. The motion was denied. The defendant then rested his case without the presentation of any evidence in order to preserve the record for appeal. At this point a conscientious judge informed the defendant that the State had introduced sufficient evidence to sustain a guilty finding and that if no additional evidence were introduced, he would find the defendant guilty. See Section 115—4(k) of the Code of Criminal Procedure (Ill. Rev. Stat. 1967, ch. 38, par. 115—4(k) ) which requires the court on motion of the defendant at the conclusion of the State's case in chief to find the defendant not guilty if the evidence is insufficient to support a verdict of guilty. The defendant introduced additional evidence. The principle that a defendant is innocent until proven guilty had, in our opinion, remained intact.

The circumstances here are not at all similar to the factual situations in the cases cited by the defendant on this issue. In *People v. Weinstein* (1966), 35 Ill.2d 467, 220 N.E.2d 432, it was held to be prejudicial error for the prosecutor to state repeatedly in closing argument before a jury that the defendant must introduce evidence showing doubt of guilt. In *People v. Magnafichi* (1956), 9 Ill.2d 169, 137 N.E.2d 256, the Supreme Court rejected the argument that the failure of the defendant to explain his presence near the scene of a robbery was a factor for a reviewing court to consider when determining whether a defendant was proved guilty beyond a reasonable doubt. In *People v. Sanders* (1934), 357 Ill. 610, 192 N.E. 697, the defendant was found in possession of recently stolen property. It was held error to give an instruction to the jury which tended to shift the burden to the defendant to account for the possession of the stolen property. In *People v. De Lordo* (1932), 350 Ill. 148, 182 N.E. 726, it was held error for the trial judge to comment in the presence of the jury upon the failure of the defendants to produce evidence.

Finally, it is contended that the trial judge had a reasonable doubt as to the defendant's guilt prior to the introduction of the defendant's prior conviction and that it was error for the court to attach too much weight to his prior conviction in determining credibility and then deciding that the defendant was guilty beyond a reasonable doubt. We do not agree. We believe the record establishes the contrary. The Court, in summing up the evidence prior to finding the defendant guilty stated the defendant was a good witness and testified in a forthright manner "and frankly until the State offered it's rebuttal evidence I felt that his credibility was reasonably good." But the court went on to say, however, that he didn't have much doubt that the police officers were credible wit-

nesses and "this is circumstantial case, of course, but I think the facts show the defendant was in these premises at this hour and there was evidence that he was in there for an improper purpose, and the fact that the doors were open with the locks broken and tool box, apparently the juke box—there was an apparent attempt to open it is sufficient evidence to infer that his intent was to commit the crime of theft in the premises."

■■ It is apparent to us that the introduction of the prior conviction was not the sole reason for the finding of guilty as defendant claims. We agree with the State that "it was no more than the icing on the cake" and that the court would have found the defendant guilty even if the defendant's prior record had not been introduced to impeach his testimony. We have carefully reviewed all of the remarks of the judge and we cannot say that the trial judge entertained any notions of a reasonable doubt as to the defendant's guilt. The testimony of the two police officers and the testimony of Henry Brown, the operator of the pool hall, was sufficient to sustain a finding of guilty. As stated in *People v. Novotny*, 41 Ill.2d 401 at 412, 244 N.E.2d 182 at 188:

"It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses [citing cases]; and we will not reverse a criminal conviction where the evidence is not so improbable as to raise a reasonable doubt of guilt."

The defendant appears to also contend that in all fairness the prior conviction of the defendant was for a crime of robbery which occurred nine years before the present charge against him and therefore was too old to have any bearing on his present credibility. We are not in accord. In *People v. Buford* (1947), 396 Ill. 158 71 N.E.2d 340, the Supreme Court upheld the admission of a 15 year old conviction for the purpose of impeachment. The Court in addressing itself to the argument of remoteness stated:

"The introduction of such record of conviction for the purpose of affecting the credibility of a witness, or the defendant who has voluntarily testified, is provided for by statute. That statute fixes no limitation as to the time of such previous conviction (Ill. Rev. Stat. 1945, ch. 38, par. 734, p. 1271). This contention cannot be sustained." 396 Ill. at 162, 71 N.E.2d at 342.

■ In *People v. Gilmore* (1969), 118 Ill.App.2d 100, the Appellate Court upheld the use of a thirteen year old conviction. See also *People v. Brown*, 69 Ill.App.2d 212, where the position taken in *Buford* was relied on to uphold the use of a prior conviction claimed by the appellant to

be too remote to be used for impeachment. In support of this contention the defendant, in the case at bar, cites *People v. Henneman* (1944), 323 Ill.App. 124 54 N.E.2d 745. This case was also cited in *Gilmore* and the Court pointed out that since the date of the opinion in *Henneman,* the Supreme Court had decided the question adversely in the case of *People v. Buford,* 396 Ill. 158, 71 N.E.2d 340. We hold that it was not error in the instant case to admit the prior conviction for purposes of impeachment.

For the reasons given the judgment is affirmed.

Judgment affirmed.

MURPHY and ADESKO, JJ., concur.