THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARTIN CONNOLLY, Defendant-Appellant.

Second District    No. 2—00—0716

Opinion filed June 13, 2001.

908

Patrick L. Provenzale, of Connolly, Ekl & Williams, P.C., of Clarendon Hills, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Margaret M. Healy and Thomas McGrath O'Connor, Assistant State's Attorneys, and Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RAPP delivered the opinion of the court:

Following a bench trial in the circuit court of Du Page County, defendant, Martin Connolly, was convicted of, *inter alia*, driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 1998)). Defendant appeals only his conviction of driving under the influence of alcohol, contending (1) that the trial court erred in denying his motion for a directed finding at the close of the State's case; (2) that the State failed to prove him guilty beyond a reasonable doubt; and (3) that he was denied a fair trial. We affirm.

## I. FACTS

On November 16, 1999, defendant was charged with driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 1998)). Defendant waived his right to a trial by jury, and the case proceeded to a bench trial.

The State called Officer Razzino of the Lombard police department. Officer Razzino was on patrol duty early in the morning of November 16, 1999. At approximately 2:45 a.m., Officer Razzino was heading west on Roosevelt Road approaching Highland Avenue when he observed a blue Ford van in front of him. At that location, Roosevelt Road has two westbound lanes and two eastbound lanes. The westbound lanes are separated from the eastbound lanes by a double yellow line. The two westbound lanes are separated by a white dashed line. Officer Razzino saw the van cross over the white dashed line dividing the westbound lanes by approximately one to two feet. The van reentered its lane of traffic and then crossed approximately five to six inches over the double yellow line into the eastbound lanes.

Officer Razzino followed the van while running the registration through dispatch. At the intersection of Roosevelt and Finley Roads, Officer Razzino activated his squad car's emergency lights to effect a traffic stop. The van traveled two or three more blocks and then pulled over. Officer Razzino radioed in the traffic stop and got out of his squad car. Defendant immediately got out of the van and approached Officer Razzino. Officer Razzino told defendant to stay where he was and defendant responded by saying, "What did I do wrong?" Officer Razzino explained to defendant that he was stopped for improper lane usage and failure to signal. Defendant said that he did not believe he committed those offenses and asked again what he had done wrong. Officer Razzino explained once more why he stopped defendant and then asked defendant for his driver's license and proof of insurance. Defendant just stood there and stared at Officer Razzino. Officer Razzino asked defendant again to produce his driver's license and proof of insurance. Defendant again asked what he did wrong while he

pulled out a state identification card. Officer Razzino ran defendant through the law enforcement data system. While waiting for a response from dispatch, Officer Razzino observed that defendant's eyes were bloodshot and glassy and that defendant had a strong odor of alcoholic beverage emanating from his breath when he spoke. Officer Razzino asked defendant where he was coming from, and defendant said he had been at a bar in Chicago. When asked if he had anything to drink at the bar, defendant threw his hands up in the air and said "Man, I will just leave my car here and I will walk to my girlfriend's house. We don't have to do this." Defendant then said something to the effect of "Why don't you go ahead and arrest me? You are going to do it anyway." Defendant then said that he had about a six-pack of beer within the last three hours.

Officer Razzino asked defendant if he could recite the alphabet beginning at E and ending at W. Defendant said that he could do it and recited "A, B, C, D, E, H, J" and then stopped and stated "I can't do this. Why don't you just go ahead and arrest me?" Next, Officer Razzino asked defendant if he could count backwards from 67 to 43. Defendant said that he could not and refused any further field sobriety testing.

Officer Razzino said that in his opinion defendant was under the influence of alcohol. Officer Razzino based his opinion on defendant's incoherence; his inability to answer simple questions or to follow simple instructions; his red, glassy, and bloodshot eyes; the strong odor of alcoholic beverage emanating from his breath; his admission of drinking; his inability to perform two field sobriety tests; and his refusal to take further field sobriety tests.

Officer Razzino advised defendant that he was under arrest for driving under the influence of alcohol, handcuffed him, and took him into custody. Officer Razzino took defendant to the Lombard police station, and defendant was put through standard booking procedure. Officer Razzino said that he handed defendant a copy of the warning to motorist and read the warning to defendant in its entirety from a standard form. When asked to submit to a Breathalyzer test, defendant refused, saying that he "felt pretty buzzed" and that there was a possibility that he "might blow over."

On cross-examination, Officer Razzino testified that it is approximately a mile to a mile and a half from the location where he saw the van cross the white and yellow lines to the location where defendant pulled over. That span of Roosevelt Road has three intersections with traffic lights, and Officer Razzino did not observe defendant commit any traffic violations while traveling that distance. There was nothing unusual in the way defendant pulled over. Defendant did not

stumble or fall when he got out of the van. Defendant was not swaying or staggering and did not need to lean on the van for support. Defendant was not belligerent or out of control. Officer Razzino did not observe defendant having difficulty in retrieving his identification card. Defendant was standing near Officer Razzino when a dispatch advised that defendant's license was suspended, but Officer Razzino tried to keep defendant from hearing the information by putting the radio up to his ear. Defendant said, "[W]hy don't you just go ahead and arrest me because you are going to anyway" after Officer Razzino determined the status of defendant's license. Officer Razzino did not notice anything irregular about defendant's speech. Officer Razzino denied that defendant said that he wanted to speak to an attorney before he would take any field sobriety tests. Officer Razzino did not include the fact that defendant was incoherent in his police report regarding the incident.

Officer Razzino indicated that defendant said that he wanted to consult with an attorney before submitting to the Breathalyzer test. Officer Razzino told defendant that he did not have the right to speak to an attorney before deciding whether to submit to the Breathalyzer test and that he could talk to an attorney later but that defendant needed to decide right now if he wanted to submit to the Breathalyzer test. Officer Razzino considered defendant's request to speak to an attorney before submitting to the Breathalyzer test as a refusal and recorded it as such. Defendant made a phone call after refusing the Breathalyzer test.

Officer Razzino admitted that defendant was able to recite his own phone number, his brother's name, phone number, and address without difficulty within an hour of his arrest. Officer Razzino did not note that defendant was confused, disorientated, loud, profane, belligerent, or combative. Rather, Officer Razzino admitted that at all times defendant was cooperative and oriented. Officer Razzino stated that defendant was handcuffed behind his back when he was walked from the squad car to the police station and had no difficulty walking on his own.

The State rested. Defendant made a motion for a directed finding. Defendant argued that the standard to be applied upon defendant's motion for a directed finding at a bench trial is that the State must have proved its case beyond a reasonable doubt. Defendant argued that the State had not met its burden. The State argued that the motion for a directed finding should be denied because the State had proved its case beyond a reasonable doubt.

The trial court denied defendant's motion. In ruling on defendant's motion for a directed finding the trial court stated:

"The burden at this point is whether, when the evidence is viewed in the light most favorable to the People, they have met their burden of beyond a reasonable doubt."

Defendant testified that on the night he was arrested he arrived at Thurston's bar in Chicago at about 7 p.m. or 8 p.m. and stayed there until the bar closed at 2 a.m. According to defendant, he consumed four beers while at Thurston's. After leaving the bar, defendant headed to Wheaton to see a girlfriend. Defendant detailed the route he traveled from the bar to Lombard. Defendant said that he had no difficulty driving the van from Chicago to Lombard. Defendant said that the van he was driving was old and the steering was loose so it "floats a bit." When defendant saw the emergency lights go on behind him he pulled over. Defendant exited his van at the same time the officer exited his squad car. Defendant began to walk toward the officer but the officer told him to stop. Defendant asked the officer why he had been stopped. The officer told him that he was swerving. Defendant denied swerving. The officer asked defendant for his driver's license. Defendant gave the officer his State of Illinois identification card because his driver's license was suspended due to unpaid parking tickets. After receiving information over the radio, the officer asked defendant if he knew his driver's license was suspended. Defendant indicated that he knew his license was suspended and that he understood he was in a little bit of trouble. Defendant asked the officer if it would be okay if he just parked the van there and walked the rest of the way to his girlfriend's house. Defendant denied ever saying, "Why don't you just go ahead and arrest me already? You are going to do it anyway." When asked, defendant told the officer that he was coming from a bar in Chicago where he had consumed four beers over the course of the evening.

According to defendant, the officer asked him to recite the alphabet backwards from H. At that point, defendant said, "Well if you are going to start testing me for, you know, field tests for DUI, I think I should talk to a lawyer first." Defendant also said "I am not refusing these tests, I am not saying that I am not going to take them, but I would like to talk to a lawyer first." According to defendant, the officer responded by saying, "Are you going to do it or aren't you? Are you refusing?" Defendant said "No, I am not refusing to take it. However, I am asking you if I can talk to a lawyer to see whether I should continue to talk to you any longer." The officer then said "Oh, you are refusing." Defendant testified that he never actually performed the alphabet test or any other test.

Defendant claimed that he was never told what would happen to his license if he refused to submit to the Breathalyzer test. Defendant

said that he made it clear to the officer that he was not refusing to submit to the Breathalyzer test but that he just wanted to talk to his lawyer before deciding. The officer then said, "I will take that as a refusal."

Defendant said that after the officer recorded the refusal he was permitted to call an attorney. After speaking to the attorney, defendant told the officer he would take the Breathalyzer test, but he was not permitted to take the test. Defendant denied telling the officer that he was "pretty buzzed" and that he thought he "might blow over." Defendant stated that he was not under the influence of alcohol that night and that he felt fine to drive.

Defendant recalled Officer Razzino. Officer Razzino testified that, at the police station, in response to questions on a prisoner information report form, defendant said that he had drunk four beers in the last eight hours.

After hearing closing arguments, the trial court found defendant guilty of driving under the influence of alcohol. Defendant filed a post-trial motion for new trial, which was heard and denied. Defendant was sentenced to two years' probation, including 90 days in the Du Page County jail. Defendant filed a timely notice of appeal.

## II. MOTION FOR A DIRECTED FINDING

Defendant's first contention on appeal is that his conviction of driving under the influence of alcohol should be reversed because the trial court applied an improper standard in ruling on defendant's motion for a directed finding at the close of the State's case. The State argues that defendant waived his right to appeal the denial of this motion when defendant presented evidence following the State's case and failed to renew his motion at the close of all the evidence.

■ A defendant who chooses to present evidence after the denial of his motion for a directed finding at the close of the State's case waives any error in the trial court's ruling on the motion unless he renews the motion at the close of all the evidence. *People v. DeBartolo*, 242 Ill. App. 3d 811, 816 (1993). At the beginning of his closing argument, defense counsel stated that he was adopting his argument in support of the motion for a directed finding in its entirety. The State argues that defense counsel merely adopted the factual arguments made in support of the motion and did not renew the motion itself. While defense counsel's statement at the beginning of his closing argument could be fairly construed as an adoption of the former argument and not a renewal of the motion, the trial court acknowledged the renewal of the motion and denied the motion on the record before the sentencing hearing began. Although defense counsel could have been more

precise, we think that he sufficiently renewed defendant's motion for a directed finding at the close of all the evidence. Therefore, the issue is properly preserved for review.

■ The statutory authority for directed verdicts and findings is found in section 115—4(k) of the Code of Criminal Procedure of 1963, which provides:

> "(k) When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant." 725 ILCS 5/115—4(k) (West 1998).

Although a motion pursuant to the above section made at a bench trial has been commonly referred to as a "motion for a directed finding" or a "motion for an acquittal," we believe the most accurate way to refer to this motion in a nonjury case is a motion for a finding of not guilty pursuant to section 115—4(k) of the Code of Criminal Procedure.

■ A motion for a directed verdict in a case tried before a jury requires the trial judge to consider only whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt, considering the evidence in a light most favorable to the State. *People v. Withers*, 87 Ill. 2d 224, 230 (1981). Defendant does not take issue with this standard but, rather, takes the position that there is no clear precedent establishing the propriety of the use of the same standard when a similar motion is made in a bench trial. Defendant argues that, upon a motion for a finding of not guilty at the close of the State's case in a bench trial, the trial court should enter a finding of not guilty when the evidence does not establish defendant's guilt beyond a reasonable doubt without considering the evidence in a light most favorable to the State. In other words, defendant argues that the sufficiency of evidence standard applied to a motion for a finding of not guilty in a bench trial should be different from the standard applied to a motion for a directed verdict in a jury trial. We disagree.

■ The due process clause of the fourteenth amendment (U.S. Const., amend. XIV) protects an accused against conviction "except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 313-14, 61 L. Ed. 2d 560, 570, 99 S. Ct. 2781, 2786 (1979). In determining the constitutional sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789. The question of the constitutional sufficiency of the evidence is, of course, entirely different from the ultimate question of guilty or not guilty, which involves the weighing of evidence and determining the credibility of witnesses, and is reserved for the finder of fact. See *Jackson*, 443 U.S. at 319 n.13, 61 L. Ed. 2d at 574 n.13, 99 S. Ct. at 2789 n.13. The purpose of authorizing a motion for a directed verdict of not guilty is to provide an avenue by which a defendant can challenge the constitutional sufficiency of the evidence against him by moving the trial court to review the evidence and to direct a verdict of not guilty if the evidence does not meet the *Jackson* standard. See 5 W. LaFave, J. Israel & N. King, Criminal Procedure § 24.6(b), at 541-42 (2d ed. 1999).

■ "A motion for a directed verdict asserts only that as a matter of law the evidence is insufficient to support a finding or verdict of guilty." *Withers*, 87 Ill. 2d at 230. In moving for a directed verdict, the defendant admits the truth of the facts stated in the State's evidence for purposes of the motion. *People v. Tibbs*, 57 Ill. App. 3d 1007, 1012 (1978). The trial judge does not pass upon the weight of the evidence or the credibility of the witnesses in testing the sufficiency of the evidence to withstand a motion for a directed verdict. *Tibbs*, 57 Ill. App. 3d at 1013. In other words, a motion for a directed verdict of not guilty asks whether the State's evidence *could support* a verdict of guilty beyond a reasonable doubt, not whether the evidence *does in fact support* that verdict. If the State's evidence does not meet the minimum constitutional sufficiency stated in *Jackson*, there is no need for a finder of fact to consider that evidence.

■ The motion for a finding of not guilty in a bench trial serves the same purpose as a motion for a directed verdict in a jury trial, *i.e.*, to test the constitutional sufficiency of the evidence *vis-a-vis Jackson*. Therefore, the trial court must consider the evidence adduced by the State in a light most favorable to the State whether it is ruling on a motion for a directed verdict of not guilty in a jury trial or on a motion for a finding of not guilty in a bench trial.

The courts of this State have applied the same standard to a motion for a finding of not guilty made during a bench trial as has been applied to a motion for a directed verdict during a jury trial. In *In re J.C.*, 260 Ill. App. 3d 872 (1994), the court recognized authority for the circuit court in a bench trial to render a finding of not guilty at the close of the State's case and then applied the "evidence [viewed] in the light most favorable to the State" standard. *In re J.C.*, 260 Ill. App. 3d at 879. In *People v. West*, 13 Ill. App. 3d 550 (1973), the case was tried to the bench and the court recognized that "'[a] directed

finding of not guilty is proper when the evidence adduced by the State, when viewed in a light most favorable to the State, fails to establish the guilt of defendant beyond a reasonable doubt." *West*, 13 Ill. App. 3d at 557. Federal courts have also applied the "evidence viewed in the light most favorable to the prosecution" standard to motions for acquittal at the close of the government's case in bench trials. See *United States v. Feinberg*, 535 F.2d 1004, 1008 (7th Cir. 1976); *United States v. DeNiro*, 392 F.2d 753, 756 (6th Cir. 1968).

■ Defendant argues that *People v. Reynolds*, 178 Ill. App. 3d 756 (1989), stands for the proposition that the appropriate standard to be applied to a motion for a finding of not guilty at the close of the State's case in a bench trial is simple proof beyond a reasonable doubt. We disagree. In responding to the defendant's argument that the trial court formed an opinion that he was guilty before the end of the trial, the *Reynolds* court quoted the trial court, " '[A]t that juncture, based upon the evidence before the court *** the State had proved its case beyond a reasonable doubt'***." *Reynolds*, 178 Ill. App. 3d at 767-68. The *Reynolds* court then said that the trial court articulated the proper standard in Illinois for a directed verdict. *Reynolds*, 178 Ill. App. 3d at 768. We do not accept *Reynolds* as authority for the proposition that the trial court need not consider the evidence in a light most favorable to the State in considering a motion for a finding of not guilty in a bench trial. First, the quoted statement of the trial court is not complete. Second, the *Reynolds* court was not deciding whether the trial court applied the right standard to defendant's motion for a directed finding. Finally, *Reynolds* cites authority holding that the evidence is to be considered in a light most favorable to the State when the trial court rules on a motion for a directed verdict.

Defendant argues that, in a bench trial, the failure of the trial judge to hold the State to its burden of proof beyond a reasonable doubt at every stage of the trial by weighing the sufficiency of the evidence in a light most favorable to the State strips defendant of his presumption of innocence and shifts the burden of proof to defendant. Defendant's argument fails to recognize the purpose of this motion.

"Questions of law shall be decided by the court and questions of fact by the jury." 725 ILCS 5/115—4(a) (West 1998). "All prosecutions except on a plea of guilty or guilty but mentally ill shall be tried by the court and a jury unless the defendant waives a jury trial in writing." 725 ILCS 5/115—1 (West 1998). In a bench trial the trial judge serves as the trier of fact (*People v. Slim*, 127 Ill. 2d 302, 307 (1989)) in addition to deciding questions of law. The fact that the trial judge also serves as the trier of fact in a bench trial does not change the purpose of the motion for a finding of not guilty, *i.e.*, to test the

constitutional sufficiency of the State's evidence *vis-a-vis Jackson*. This procedure does not strip defendant of his presumption of innocence, nor does it shift the burden of proof. See *People v. Bradley*, 131 Ill. App. 2d 91, 96 (1970).

Defendant argues that, in a bench trial, a defendant is compelled to present evidence when the trial judge denies defendant's motion for a finding of not guilty at the close of the State's case because a defendant will assume that a trial judge who denies a motion for a directed finding is going to find him guilty if no other evidence is presented. A defendant should make no such assumption because, as explained above, the standard applied to a motion for a finding of not guilty at the close of the State's case is different from the standard applied to the ultimate issue of guilt. That being the case, a defendant is no more compelled to present evidence after a motion for a directed verdict is denied in a jury case than when a motion for a finding of not guilty is denied in a nonjury case. A trial judge's ruling in a bench trial that the evidence presented during the State's case in chief is constitutionally sufficient under *Jackson*, *i.e.*, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis omitted) (*Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789), does not preclude the trial judge from ruling that the State did not prove defendant guilty beyond a reasonable doubt upon that very same evidence. For example, the trial judge may find that there is sufficient evidence for a reasonable trier of fact to find every element of a crime proved beyond a reasonable doubt but then conclude that every element of the offense was not proved beyond a reasonable doubt because the trial judge, as the trier of fact in that case, did not find the State's evidence, with respect to a given element, credible.

For the foregoing reasons, we hold that the trial court must view the State's evidence in a light most favorable to the State in ruling on a motion brought pursuant to section 115—4(k) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—4(k) (West 1998)) whether the trial court is sitting with or without a jury. Accordingly, the trial court in this case applied the appropriate standard.

Alternatively, defendant argues that the evidence presented during the State's case in chief was insufficient when viewed in a light most favorable to the State and therefore the trial court erred in denying his motion for a finding of not guilty at the close of the State's case. We disagree.

■ A motion for a finding of not guilty, like a motion for a directed verdict, presents a question of law. See *Withers*, 87 Ill. 2d at 230. The

appellate court reviews questions of law on a *de novo* basis. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Therefore, in reviewing a trial court's ruling on a motion for a finding of not guilty pursuant to section 115—4(k), we apply a *de novo* standard of review. In assessing defendant's claim we must, as the trial judge did, review the evidence presented during the State's case in chief in the light most favorable to the State and decide whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt. *Withers*, 87 Ill. 2d at 230.

▪ A person commits the offense of driving under the influence of alcohol when he drives a vehicle and, as a result of drinking any amount of alcohol, he has so impaired his mental or physical faculties as to reduce his ability to think and act with ordinary care. 625 ILCS 5/11—501(a)(2) (West 1998); Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000). Officer Razzino observed the van defendant was driving leave its lane of traffic once on each side. Officer Razzino noticed a strong odor of alcoholic liquor emanating from defendant's breath. Defendant's eyes were bloodshot, and glassy. Defendant admitted that he had been at a bar in Chicago most of the night and that he drank about a six-pack of beer within about three hours. Defendant was not able to perform an alphabet or a counting field sobriety test and refused any further field sobriety testing. Officer Razzino stated that in his opinion defendant was under the influence of alcohol. Finally, when asked to submit to a Breathalyzer test, defendant refused, saying that he "felt pretty buzzed" and that there was a possibility that he "might blow over."

▪ To be sure, defense counsel elicited some evidence on cross-examination of the officer that contradicted the evidence that defendant was impaired by consuming alcohol. However, we can only conclude that, when viewed in the light most favorable to the State, the evidence adduced during the State's case in chief was sufficient for a reasonable trier of fact to fairly conclude that defendant was guilty of driving under the influence of alcohol beyond a reasonable doubt. Accordingly, we affirm the trial court's denial of defendant's motion for a finding of not guilty at the close of the State's case.

### III. THE SUFFICIENCY OF THE EVIDENCE AS A WHOLE

Defendant's second contention on appeal is that the State failed to prove him guilty of driving under the influence of alcohol beyond a reasonable doubt. A conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant inquiry is " 'whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *Collins*, 106 Ill. 2d at 261, quoting *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.

■ Our analysis of the sufficiency of the evidence to support the finding of guilt is identical to the analysis applied to the sufficiency of the evidence at the close of the State's case upon the motion for a finding of not guilty. The only difference is that we must now also consider the evidence adduced by defendant during his case.

■ Defendant's testimony included an explanation that he refused field sobriety testing and the Breathalyzer test not because he was conscious of his impairment due to his consumption of alcohol but, rather, because he thought he should talk to his attorney before making the decision to submit to the tests. Even if the trial court believed this explanation, as defendant contends, the trial judge's comments at the close of the evidence show that she did not find that the explanation negated defendant's consciousness of guilt:

> "The defendant's testimony with respect to his consciousness of guilt argument is that when asked if he would perform certain tests he thought that it may be unwise to attempt to perform the tests without consulting with an attorney. That doesn't negate an inference of consciousness of guilt. Why would it be unwise if the defendant was not under the influence of alcohol?"

According to defendant's trial testimony, he had four beers while he was at a bar for six to seven hours. Officer Razzino testified that defendant told him he had a six-pack in the last three hours. Defendant said that he never performed the alphabet test or any other field sobriety test, while Officer Razzino testified that defendant tried and failed the alphabet test and said he could not do the counting test. The trial court found the testimony of the officer to be "extremely credible and forthright." In a bench trial, it is the responsibility of the trial court to judge the credibility of the witnesses. *People v. Vasquez*, 233 Ill. App. 3d 517, 527 (1992). We must give due deference to that conclusion. It is not the function of the reviewing court to retry defendant. *Collins*, 106 Ill. 2d at 261. We conclude, based on the evidence in this case, that a rational trier of fact could have found defendant guilty of driving under the influence of alcohol beyond a reasonable doubt. We therefore hold that the State proved defendant's guilt beyond a reasonable doubt, and we affirm the trial court's finding of guilty.

## IV. FAIR TRIAL

Defendant's last contention on appeal is that he was denied a fair trial because the trial court (1) prevented him from impeaching Of-

ficer Razzino with an omission in the officer's police report; (2) improperly permitted the State to refresh the officer's recollection; and (3) took judicial notice of scientific facts. We will address each argument in turn.

■ Defendant argues that the trial court erred by preventing him from impeaching the arresting officer regarding omissions in his police report about defendant's request for an attorney. The objections that the trial court sustained were to questions put to the officer by defense counsel concerning the officer's opinion of the importance of a request to speak to an attorney, not whether that detail was included or not included in the officer's police report. The trial court decided that the questions called for irrelevant evidence. The admissibility of evidence at trial is a matter within the sound discretion of the trial court, and that decision will not be overturned on appeal absent a clear abuse of discretion. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991). We agree that the question called for irrelevant evidence and therefore find no abuse of discretion.

■ After defendant recalled Officer Razzino during his case, the assistant State's Attorney cross-examined the officer and the following exchange occurred:

"[ASSISTANT STATE'S ATTORNEY]: Isn't it true on the same report another question you asked the defendant is, 'Are you currently feeling high or influenced by drugs or alcohol?'
OFFICER RAZZINO: Yes.
[ASSISTANT STATE'S ATTORNEY]: Do you remember his response?
OFFICER RAZZINO: I believe he said no.
[ASSISTANT STATE'S ATTORNEY]: You believe it or—
OFFICER RAZZINO: I would need the report to refresh my memory.
[DEFENSE COUNSEL]: I will object he answered the question.
THE COURT: Overruled.
[ASSISTANT STATE'S ATTORNEY]: Is your memory exhausted to what you—
[DEFENSE COUNSEL]: I think for the record he answered the question. He said 'no.' I don't know how he can get back into it by saying that he needs the report to refresh the—
THE COURT: I heard the answer and the question and the objection is overruled."

Thereafter, the assistant State's Attorney refreshed Officer Razzino's memory with the prisoner information report. Officer Razzino then testified that the defendant said yes when asked, "Are you currently feeling high or influenced by drugs or alcohol?"

Defendant cites no authority in support of his argument that he

was denied a fair trial when the State was allowed to refresh the officer's recollection with his report. Pursuant to Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)), a reviewing court is entitled to be cited to pertinent authority in support of appellant's contentions. *People v. Trimble*, 181 Ill. App. 3d 355, 356 (1989). At any rate, a police report can be used to refresh a witness's recollection, and the manner and mode in which recollection is refreshed are matters within the sound discretion of the trial court. *People v. Shatner*, 174 Ill. 2d 133, 153 (1996). After reviewing the relevant testimony, we conclude that the trial court did not abuse its discretion in permitting the State to refresh the officer's recollection.

■ The trial court made the following comment when ruling on defendant's motion for a finding of not guilty at the close of the State's case:

"[Defense counsel] has made much of the fact that the defendant was able to recall later various phone numbers and information that were memorized that he could provide to the officer, but I think it's significant that those are the types of numbers or information that are memorized, it's not the type of thing that requires thinking.

The testimony was with respect to the alphabet test he was supposed to recite from E to W. It would require him to think. He couldn't do it.

Counting backwards 67 to 43, again, it's not the type of thing that the defendant would have memorized, it would require him to think with ordinary care and he was unable to do it."

Defendant argues that the assumptions made by the trial court about the effect of alcohol on the ability of the brain to recall different types of memorized information amounted to the improper judicial notice of scientific facts. We do not agree.

It is the responsibility of the trier of fact to make all reasonable inferences drawn from the evidence. *People v. Nitz*, 143 Ill. 2d 82, 95 (1991). The trial court, as the finder of fact, heard evidence that defendant could not count backwards or recite the alphabet from E to W. The trial court then heard evidence that defendant could recall and recite his own phone number as well as his brother's name, phone number, and address. From this evidence the trial court simply concluded that a person impaired by alcohol would have an easier time performing the latter task than the former. We do not believe the trial court took judicial notice of any scientific fact; rather, the trial court made a reasonable inference based upon the evidence.

## V. CONCLUSION

For the reasons stated, we affirm the judgment entered by the circuit court of Du Page County.

Affirmed.

BOWMAN and BYRNE, JJ., concur.