# Illinois Official Reports

## Appellate Court

---

### *People v. Lawson*, 2015 IL App (2d) 140604

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KATHLEEN NEELY LAWSON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-0604 |
| Filed | March 3, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant was convicted of two counts of forgery in connection with a letter of diminished capacity purportedly written by a treating psychologist in order to transfer assets from her father's trust to her mother, the appellate court held the letter was made with the intent to defraud and delivered, regardless of the fact that no one was defrauded and the letter was unsuccessful. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 12-CF-2065; the Hon. John A. Barsanti, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert G. Black, of Law Offices of Robert G. Black, of Naperville, for appellant.<br><br>Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Zenoff and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Kathleen Neely Lawson, appeals her convictions of two counts of forgery (720 ILCS 5/17-3(a)(1), (a)(2) (West 2012)). She contends that the State failed to prove beyond a reasonable doubt that, with the intent to defraud, she knowingly made and delivered a false document that was apparently capable of defrauding another. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant was indicted on two counts of forgery in connection with a letter of diminished capacity purportedly written by a treating psychologist. The letter was provided in order to facilitate the transfer of assets from the trust of defendant's father, Harry Neely, to her mother, Donna Neely. It was alleged that the letter was made with the intent to defraud (count I) and was delivered (count II). On March 17, 2014, a bench trial was held.

¶ 4        Mark Neely, defendant's brother, testified that Harry suffered a series of strokes in October 2011. As a result, Harry was transferred to The Tillers Nursing and Rehabilitation Center (The Tillers) in Oswego, where he remained until he passed away 18 to 20 months later. During Harry's time there, he could not get up and walk on his own, he was always sleepy, and he was unable to speak for very long. Over time, his condition improved only slightly.

¶ 5        Early in Harry's stay at The Tillers, a dispute arose over his care. Mark and his wife wanted to bring Harry to their home, while defendant and Donna wanted him to remain at The Tillers. In November 2011, Mark filed a petition for guardianship but, after a discussion with Donna, he agreed to drop the matter if he and other family members were kept advised of Harry's medical care. Mark agreed with the view that Harry was unable to properly administer his trust or make decisions.

¶ 6        Barry Killian, Harry's financial advisor, testified that, in September 2010, he opened a traditional individual retirement account and a personal trust account for Harry. He also helped set up similar accounts for Donna. When Harry suffered the strokes, there was about $1.3 or $1.4 million among the accounts. Harry was both the trustee and the beneficiary of his own trust, with Donna's trust as the successor beneficiary. Mark and defendant were successor trustees.

¶ 7        Killian met with defendant and Donna on March 11, 2012, because defendant wanted to make changes to the accounts quickly to get them in Donna's name. Killian advised defendant that they would need a doctor's letter certifying that Harry was incapacitated to manage his financial affairs. Defendant's initial response was that she would be unable to do that, and Killian reiterated that a doctor's letter was required.

¶ 8        Later that day, defendant called Killian and said that she had secured a doctor's letter. Killian then met defendant, who gave him a letter written on letterhead from The Tillers. The letter stated: "As diagnosed November 11, 2011[,] hereby certifying that, Harry Clifford Neely is unable to properly administer the Trust for his benefit and is not able to make decisions." It was purportedly signed by Samuel Robert Rest, Ph.D. Killian testified that he knew upon viewing it that it would be insufficient because such letters are ordinarily written on medical professional stationery and not on a memo pad or loose paper from a nursing home. Killian expressed concern about the letter to defendant, who said that it was as good as it was going to get.

¶ 9        Regardless of any suspicions, Killian always sent any letters of diminished capacity to the compliance department of his company. That would set off a series of further protocols before any disbursements could be made. The compliance department rejected defendant's letter, stating that she needed a letter on medical stationery. Killian recalled that defendant was not happy about that. No funds or authority over Harry's accounts was transferred.

¶ 10       Within a week or two of the rejection of the letter, defendant or Donna submitted a second letter, from Dr. Michael Marzec, made on Dreyer Medical Clinic letterhead. That letter was accepted, and Killian submitted paperwork to transfer assets from Harry's trust to Donna's trust.

¶ 11       Rest testified that he had been a licensed clinical psychologist for 20 years and served as a consultant at The Tillers. Rest assessed Harry in November 2011 and concluded that his level of functioning was fairly low. Harry suffered from dementia and exhibited anxiety. However, a comprehensive diagnosis was difficult to perform because it was hard to get a good deal of information from him. Rest evaluated Harry again in January 2012 and concluded that he was not completely oriented. Harry's responses to basic yes-or-no questions were not accurate and he was unable to maintain any level of arousal. Rest believed that Harry had a moderate to significant level of cognitive impairment. Rest told defendant that he believed that Harry needed 24-hour assistance and would be unable to function independently. Rest agreed that Harry was unable to manage his own physical and financial affairs and was unable to make his own decisions.

¶ 12       Rest stated that a letter of diminished capacity indicates that, based on an individual's current level of cognitive and emotional functioning and the resulting diagnostic impression, the individual would need assistance making basic decisions and would be unable to care for his or her own well-being. Rest had written such letters before, but never on The Tillers letterhead, as he was not an employee of The Tillers.

¶ 13       Rest recalled that, around March 2012, defendant asked him to write a letter of diminished capacity regarding Harry. Rest refused and never wrote one. He also never signed a predrafted letter of diminished capacity regarding Harry. Rest learned of defendant's letter when a person at The Tillers showed it to him. He said that the signature was not an accurate representation of his own signature. Defendant later told him that she wrote the letter and she apologized for doing so.

¶ 14       After Rest testified, the State rested. Defendant moved for a directed finding, arguing that the letter was not capable of defrauding anyone and that it was without legal efficacy. She argued that there was no intent to defraud since, shortly later, a valid diminished-capacity letter was presented. The court denied the motion, and the defense rested without presenting

evidence. The court found defendant guilty, her motion to reconsider was denied, and she appeals.

¶ 15                                                    II. ANALYSIS

¶ 16    Defendant contends that the evidence was insufficient to prove her guilty beyond a reasonable doubt. She argues that the letter was not apparently capable of defrauding another and that she lacked the intent to defraud.

¶ 17    Defendant argues error both with the court's denial of her motion for a directed finding and with its determination of guilt. A motion for a directed finding asserts only that, as a matter of law, the evidence is insufficient to support a finding of guilty. *People v. Connolly*, 322 Ill. App. 3d 905, 915 (2001). In moving for a directed finding, the defendant admits the truth of the facts stated in the State's evidence for purposes of the motion. *Id.* The trial judge does not pass upon the weight of the evidence or the credibility of the witnesses. *Id.* In other words, such a motion asks whether the State's evidence could support a finding of guilty beyond a reasonable doubt, not whether the evidence does in fact support that finding. *Id.*

¶ 18    In regard to the finding of guilt, a reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In reviewing a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Here, the court reviewed the same evidence and heard the same arguments when making both determinations. Thus, our analysis of the sufficiency of the evidence to support the finding of guilt is identical to the analysis of the sufficiency of the evidence at the close of the State's case. See *Connolly*, 322 Ill. App. 3d at 919.

¶ 19    A person commits forgery when, with the intent to defraud, he or she knowingly makes a false document and that document is apparently capable of defrauding another or the person issues or delivers such a document knowing it to have been falsely made or altered. 720 ILCS 5/17-3(a)(1), (a)(2) (West 2012).

¶ 20    Defendant first argues that the letter was not apparently capable of defrauding another, because it was just one step in a process of transferring funds, because Killian recognized that it was not valid, and because it ultimately lacked legal efficacy.

¶ 21    "A document apparently capable of defrauding another includes, but is not limited to, one by which any right, obligation or power with reference to any person or property may be created, transferred, altered or terminated." 720 ILCS 5/17-3(c) (West 2012). A " 'false document' *** includes, but is not limited to, a document whose contents are false in some material way, or that purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority." 720 ILCS 5/17-3(c-5) (West 2012).

¶ 22    "[T]he State must prove beyond a reasonable doubt that a defendant, with the intent to defraud, knowingly made or altered a document such that it is capable of defrauding another." *People v. Brown*, 2013 IL 114196, ¶ 39 (citing 720 ILCS 5/17-3(a)(1) (West 2006)). To be apparently capable of defrauding another, a document need not be in due legal

form or be so skillfully prepared that it requires an expert to detect that it is fraudulent. *Id*. (citing *Goodman v. People*, 228 Ill. 154, 158 (1907)). "Rather, the test of whether a forged document is apparently capable of defrauding another is whether a reasonable person might be deceived into accepting the document as genuine." *Id*. Thus, a document's capacity to defraud another need be only apparent, not actual. *People v. Reynolds*, 85 Ill. App. 3d 549, 553 (1980).

¶ 23    Here, there was sufficient evidence that a reasonable person might be deceived into accepting the document as genuine. It was presented with the name of a person who had evaluated Harry and it was on letterhead from the facility where he received care. A reasonable person could determine that it was legitimate.

¶ 24    Defendant relies on *Goodman* and *Waterman v. People*, 67 Ill. 91 (1873), for the argument that, because the letter ultimately lacked legal efficacy, it was not apparently capable of defrauding another. That argument fails. In *Goodman*, the defendant was convicted of offering a forged railroad pass. On appeal, the forgery indictment was held defective because it did not state extrinsic facts to show how the pass was to be used to defraud the railway company, whether the company had any means of transportation for which the pass could be used, or that the person whose name appeared on the pass as general manager of the company in fact held that office. The supreme court recognized that the test required that a reasonable and ordinary person might be deceived into accepting the document as genuine and that it need not be so skillfully executed as to require an expert to detect its falsity. But there, the potential to defraud did not appear on its face and could be shown only through additional facts about how it was to be used. Since the indictment failed to provide those facts, it was insufficient. *Goodman*, 228 Ill. at 163; see also *Waterman*, 67 Ill. at 92-93 (finding an indictment insufficient when a similar document, if valid, would not have affected any legal rights). Defendant also argues that *People v. Muzzarelli*, 331 Ill. App. 3d 118, 123 (2002), illustrates that a document lacking legal efficacy cannot be capable of defrauding a person. But *Muzzarelli* held that a document that "could" affect or alter a right or obligation can be capable of defrauding another. *Id*.

¶ 25    Here, the document was facially sufficient to start the process of transferring funds. That is, unlike in *Goodman* or *Waterman*, the document here had the potential to have a legal effect. It did not have to be so skillfully prepared that experts such as Killian or the compliance department would be unable to detect it. Thus, it was apparently capable of defrauding another. It did not have to actually succeed.

¶ 26    Next, defendant argues that the State failed to prove intent to defraud, since she did not seek the funds for herself, there was no dispute that Harry was actually incapacitated, and a valid letter was eventually obtained.

¶ 27    Intent to defraud does not require that defendant sought to benefit only herself. For the purposes of proving forgery, to act " '[w]ith intent to defraud' means to act knowingly, and with the specific intent to deceive or cheat, for the purpose of causing financial loss to another or bringing some financial gain to oneself, regardless of whether any person was actually defrauded or deceived." 720 ILCS 5/17-0.5 (West 2012). It "includes intent to cause another to assume, create, transfer, alter, or terminate any right, obligation, or power with reference to any person or property." *Id*. Here, defendant deliberately created a false document intended to cause the transfer of funds from Harry to Donna. This conduct meets

the statutory definition. Defendant did not lack the intent to defraud simply because she sought the funds on behalf of another person.

¶ 28 In addition, intent to defraud "may be inferred from the circumstances of the transaction and, if the forged document is delivered, then the intent to defraud will be presumed." *People v. Hunter*, 331 Ill. App. 3d 1017, 1026 (2002). Further, as previously noted, "[i]t is immaterial to the crime of forgery whether anyone was in fact defrauded." *People v. Henderson*, 71 Ill. 2d 53, 57 (1978). " 'Forgery *** does not require that anyone be actually defrauded of his money or property. One who has never had a chance to pass his forged document, or whose forgery is spotted when he tries to pass it, is nevertheless guilty of forgery.' " *Id.* (quoting Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 90, at 671-72 (1972)).

¶ 29 Here, defendant delivered the letter to Killian and thus the trial court could presume that defendant possessed the requisite intent. That the letter ultimately was unsuccessful, a different letter was later obtained, and Harry was properly found to be incapacitated were immaterial to that determination.

¶ 30 III. CONCLUSION

¶ 31 The evidence was sufficient to show beyond a reasonable doubt that defendant, with the intent to defraud, knowingly made and delivered a false document that was apparently capable of defrauding another. Accordingly, the judgment of the circuit court of Kane County is affirmed.

¶ 32 Affirmed.