**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180168-U

Order filed February 18, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0168 Circuit No. 17-CM-2272 |
| | ) | |
| REBECCA L. WALLACE, | ) ) | Honorable Chrystel L. Gavlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Justices Daugherity and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The court properly denied defendant's motion for directed verdict and motion for judgment notwithstanding the verdict, as reasonable minds could disagree regarding the proper conclusions to draw from the evidence presented.

¶ 2    Defendant, Rebecca L. Wallace, appeals her conviction for battery, arguing the Will County circuit court erred by denying her motion for directed verdict and motion for judgment notwithstanding the verdict. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The State charged defendant with misdemeanor battery (720 ILCS 5/12-3(a)(2) (West 2016)), alleging that defendant "knowingly, without legal justification, made physical contact of an insulting or provoking nature with R.M., A Minor (Born 2002), in that said defendant grabbed R.M. *** about the body."

¶ 5      At trial, R.M. testified that A.G., her friend and defendant's stepdaughter, invited her into A.G.'s home, where A.G. lived with her father, Gary Gasparas, and defendant. A.G. and R.M. were best friends, and R.M. had visited "[t]ons of times." R.M. went to A.G.'s bedroom to begin packing for a sleepover, while A.G. went to the bathroom. Defendant confronted R.M., demanding that R.M. leave the house because she was not welcome. R.M. testified that defendant had never said anything like this to her before. R.M. told defendant that she and A.G. would leave after they packed A.G.'s things. Defendant, who continued yelling at R.M. to leave, grabbed and pulled R.M.'s right arm with both hands, applying pressure.

¶ 6      A.G. testified that, after she left the bathroom, she saw defendant holding and pulling on R.M.'s arm. A.G. and R.M. left the house, and R.M. called her mother, who called the police. R.M. testified that she was never told she was not allowed at the house prior to the incident, and that Gasparas always acted welcomingly toward her.

¶ 7      Will County Sheriff's Deputy Nicholas Hindman arrived at the scene and interviewed R.M., A.G., and defendant separately. His conversations with R.M. and A.G. mirrored their trial testimony. When he spoke with defendant, she said that R.M. was not welcome in her house because R.M. had disrespected her multiple times. Hindman testified that defendant denied raising her voice or physically touching R.M.

¶ 8      The State rested its case after Hindman's testimony.

¶ 9       Defendant moved for a directed verdict, arguing the State failed to prove her use of force was not justified to remove a trespasser from her home. The court denied the motion, saying, "Looking at the evidence presented in the light most favorable to the State *** there has been sufficient enough evidence for the jury to decide the case."

¶ 10      Defendant presented testimony from E.M., defendant's daughter, and Gasparas.

¶ 11      E.M. testified that she was in the basement and did not witness the altercation. However, from the basement she heard defendant tell R.M. to leave and R.M. respond that because defendant does not pay the bills, defendant could not tell her what to do. E.M. testified that defendant raised her voice and again told R.M. to leave. E.M. heard A.G. tell defendant to leave R.M. alone, and R.M. and A.G. then left the house.

¶ 12      Gasparas testified that he was out of town for work on the day in question. He testified that he had full custody of A.G., but she was supposed to stay with her biological mother that night. He testified that R.M. had been at his house quite often and that he never had a problem with her.

¶ 13      The defense rested its case after Gasparas's testimony.

¶ 14      At defendant's request, the court instructed the jury on Illinois Pattern Jury Instruction No. 24-25.07, entitled "Use of Force in Defense of Dwelling," which states "[a] person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to terminate another's unlawful entry into a dwelling."

¶ 15      The jury found defendant guilty of battery.

¶ 16      Defendant filed a motion for judgment notwithstanding the verdict, arguing the State failed to prove beyond a reasonable doubt that her conduct was not legally justified. The court denied the motion, saying, "The jury heard the evidence in this case. The jury is the trier of fact. The jury

also had an opportunity to observe all witnesses while testifying. The jury weighs the credibility of those witnesses, which is what they are supposed to do."

¶ 17    The court sentenced defendant to 18 months' court supervision. The court also ordered defendant to pay $750 in fines and costs, have no contact with R.M., attend anger management classes, and complete 100 hours of public service work.

¶ 18    Defendant appeals.

¶ 19                                II. ANALYSIS

¶ 20    Defendant argues the court erred by denying her motion for directed verdict and motion for judgment notwithstanding the verdict because she used reasonable force in an effort to remove a trespasser from her home. We disagree. The court properly denied defendant's motions, as reasonable minds could disagree over the proper conclusions to draw from the evidence presented.

¶ 21    We review *de novo* a circuit court's ruling on a motion for directed verdict and a motion for judgment notwithstanding the verdict. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37. While these motions are made at different times, "they raise the same questions and are governed by the same rules of law." *Id.*

¶ 22    A directed verdict in favor of a defendant is appropriate when the State fails to establish a *prima facie* case. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 122 (2004); see *People v. Relwani*, 2019 IL 123385, ¶¶ 16-18. If the State fails to produce evidence supporting a required element of the offense charged, "then no cause is presented for the jury's consideration and the entry of a directed verdict for the defendant is proper." *Id.* at 123. A motion for a directed verdict requires the circuit court "to consider only whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt, considering the evidence in a light most favorable to the State." *People v. Connolly*, 322 Ill. App. 3d 905, 914 (2001). "[A] motion for a directed verdict

4

of not guilty asks whether the State's evidence *could support* a verdict of guilty beyond a reasonable doubt, not whether the evidence *does in fact support* that verdict." (Emphasis in original.) *Id.*

¶ 23    "A motion for judgment notwithstanding the verdict should only be granted when the evidence and inferences, viewed in the light most favorable to the nonmoving party, 'so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " *Thornton v. Garcini*, 237 Ill. 2d 100, 107 (2010) (quoting *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992)).   "The standard for entry of judgment [notwithstanding the verdict] is a high one and is not appropriate if reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented."  (Internal quotation marks omitted.)  *Lawlor*, 2012 IL 112530, ¶ 37 (quoting *York v. Rush Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006), quoting *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 311 (1942)).

¶ 24    "A person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual."  720 ILCS 5/12-3(a) (West 2016).  By grabbing, pulling, and applying pressure to R.M.'s arm, defendant committed battery.  Defendant does not deny that her actions constituted a battery; instead, she argues her use of force was justified (see *id.* § 7-2), and the court erred by denying her motion for directed verdict and motion for judgment notwithstanding the verdict on those grounds.

¶ 25    The court did not err by denying defendant's motion for directed verdict, as the evidence the State presented, viewed in the light most favorable to the State, could lead a reasonable mind to find defendant guilty beyond a reasonable doubt.  See *Connolly*, 322 Ill. App. 3d at 914.  The State presented evidence supporting each element of battery, such that the cause could be presented

5

to the jury. See *Sullivan*, 209 Ill. 2d at 122. Because the State's evidence established a *prima facie* case for battery against defendant, the court properly denied defendant's motion for directed verdict.

¶ 26 Likewise, the court did not err by denying defendant's motion for judgment notwithstanding the verdict, as the evidence presented did not favor defendant so overwhelmingly that no contrary verdict based on the evidence could stand. See *Garcini*, 237 Ill. 2d at 107. It would have been inappropriate for the court to grant a motion for judgment notwithstanding the verdict here because reasonable minds could differ regarding what inferences to make and conclusions to draw from the evidence presented. See *Lawlor*, 2012 IL 112530, ¶ 37. Therefore, the court properly denied defendant's motion for judgment notwithstanding the verdict, as defendant did not meet the high standard necessary to warrant such relief.

¶ 27                                      III. CONCLUSION

¶ 28 The judgment of the circuit court of Will County is affirmed.

¶ 29 Affirmed.